RECEIVED
USDC CLERK, CHARLESTON, SC

2006 JUN 19  A 11: 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mitchell J. Pettinato, #218405, | C. A. No. 2:05-1226-PMD-RSC |
| Petitioner, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| Willie Eagleton, Warden, | |
| Respondents. | |

This habeas corpus petition under 28 U.S.C. § 2254 filed April 28, 2005, by a state prisoner proceeding pro se is before the undersigned United States Magistrate Judge for a report and recommendation on the respondents' summary judgment motion filed on January 6, 2006. 28 U.S.C. § 636(b).

**PROCEDURAL HISTORY**

The petitioner, Mitchell Pettinato, is currently confined at the Kirkland Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Spartanburg County. Petitioner was indicted at the July 1994 term of the Court of General Sessions for Spartanburg County for murder and possession of a firearm during the commission of a violent crime. Don Thompson, Esquire, represented Petitioner on the charges. Petitioner proceeded to trial before a jury and the Honorable J. Derham Cole on November 28, 1994. After all testimony had been presented, but prior to final arguments, Petitioner, pursuant to negotiations with the state, withdrew his plea of not guilty and entered a plea of

guilty but mentally ill. (App. p. 382). Judge Cole sentenced Petitioner to life for murder and five (5) years, concurrent, for possession of a firearm during the commission of a violent crime. Petitioner did not appeal his guilty pleas or sentence.

On February 22, 1995, Petitioner filed an Application for Post-Conviction Relief. (95-CP-42-379). In his application and a subsequent amended application, Petitioner alleged he was being unlawfully held for the following reasons:

> 1. Ineffective assistance of counsel;
>
> 2. Denied due process of law;
>
> 3. Denied the right to be fully heard;
>
> 4. Denied the right to cross examine the witnesses against me when such cross examination would have proven in most cases that witnesses were committing perjury;
>
> 5. Although I cannot find anything in the law books regarding the behavior of the Judge and/or Prosecutor I do accuse the prosecution, acting improperly, if not plain unlawfully and using their positions to intimidate me, both while court was in session and in recess, this I believe denied me equal protection under the law;
>
> 6. Murder charge was an overcharge of the actual incident and correct charge should have been manslaughter;
>
> 7. Denied the right to speak while at my arraignment on charge of murder;
>
> 8. Defense did not adequately investigate my case nor did they subpoena evidence that I asked for;
>
> 9. I would like to challenge the validity have [sic] having the same punishment for someone found guilty in that guilty but mentally ill shows that

a person is unable to conform to the law due to no fault of there [sic] own;

10. Failure to provide me with any warrants and/or indictments relating to the four gun charges;

11. Not advised of right to appeal;

12. Counsel failed to object to improper and false statements made by the prosecutor which prejudiced the jury;

13. Counsel failed to conduct a proper investigation both factual and legal, to determine if matters of defense could be developed, and to allow himself enough time for reflection and preparation for trial;

14. Counsel failed, after plaintiff's request to obtain or attempt to obtain a psychiatric evaluation by an independent psychiatrist where there was reasonable cause to believe that the report of the examining psychiatrist, who was employed by the State, was prepared for the prosecution's benefit and the evaluation was not properly conducted. Counsel should have known that plaintiff was entitled to an independent psychiatrist, under 18 U.S.C. §3006A ©, who could supply expert services "necessary" to an adequate defense;

15. Counsel failed to move the court as to a reduced charge of voluntary manslaughter, while court was in session, although counsel claimed that he did, during recess, and the judge denied his request. This occurred just prior to guilty plea being entered;

16. Counsel gave erroneous advice when he told plaintiff that the court would only allow the jury to consider "not guilty", "guilty", and "guilty but mentally ill" as the only verdicts, and counsel should have know that "not guilty by reason of insanity" should have been included or that plaintiff stood a good chance for a reversal on appeal. This erroneous advice coerced the plaintiff into pleading "guilty but mentally ill". Counselor [sic] was ineffective when he allowed a

3

plea of "guilty but mentally ill", without objection, when motions were before the court and were not ruled upon prior to the entering of the plea of "guilty but mentally ill";

17. Counsel failed to request the charge on murder v. manslaughter required by State v. King;

18. Denied "due process of law -- Plaintiff was denied "due process of law" as he was incompetent to stand trial and was not criminally responsible for his actions due to mental illness...;

19. Abuse of discretion - it was "abuse of judicial discretion" to allow plaintiff to stand trial for three gun charges that were brought to plaintiff's attention for the first time at his trial...;

20. White v. State Review - Plaintiff is seeking, and believes he is entitled to a "White v. State Review" so he may raise his appealable issues, as Plaintiff did not knowingly and intelligently waive his right to direct appeal. Rule 227(6) Appellate Court Rules;

21. Plaintiff contends that he is being held in custody illegally as he is unable to legally plead guilty but mentally ill, and he cannot be held responsible for his actions when he wasn't fully aware of what he was doing and did not have sufficient internal controls over his actions to conform them to the requirements of the law.

The Honorable Paul M. Burch held an evidentiary hearing in the matter on March 20, 1996, at which Petitioner was present represented by Michael Duncan, Esquire. Petitioner testified on his own behalf and also called his trial attorney to testify. After the hearing, Judge Burch issued an Order of Dismissal, dated April 26, 1996, dismissing the Application in its entirety. Petitioner filed a timely Notice of Appeal. On October 8, 1996,

Petitioner's counsel, Lisa T. Gregory, Esquire, of the South Carolina Office of Appellate Defense, filed a <u>Johnson</u> Petition for Writ of Certiorari and Petition to be Relieved as Counsel which presented the following question:

> Whether the lower court erred in denying the petitioner's application for post-conviction relief where there was testimony that the petitioner desired an appeal and counsel failed to file the necessary notice of intent to appeal.

By Order dated February 21, 1997, the South Carolina Supreme Court denied the petition and granted counsel's request to withdraw.

The petitioner filed his first federal habeas petition on August 4, 1997, C/A 4:97-2517-23BE. On November 3, 1997, Petitioner filed a motion to hold the matter in abeyance to allow filing of a second state PCR action to allege ineffective assistance of PCR counsel at the PCR hearing and on appeal. On March 26, 1998, then Magistrate Judge now District Judge, Margaret B. Seymour denied Petitioner's motion to stay. Petitioner then moved, on May 4, 1998, to dismiss his habeas petition without prejudice pursuant to Fed.R.Civ.P. 41(a)(2), and the Honorable Patrick Michael Duffy, United States District Judge, granted the motion and dismissed the petition on September 29, 1998.

On October 16, 1997, Petitioner filed a second PCR action in the state court and raised ineffectiveness of his PCR counsel and

5

the alleged denial of a full and fair PCR hearing as well as several of the grounds that he had raised in the first PCR action. On June 19, 2000, the Honorable Lee S. Alford dismissed the second PCR action, finding that the petition was barred as successive and that Petitioner failed to present evidence to support his claim that his PCR attorney was ineffective for failing to present evidence that Petitioner was incompetent to proceed with the PCR hearing. On May 11, 2001, the petition for a writ of certiorari from denial of PCR relief was dismissed without prejudice and remanded on Petitioner's motion to allow the PCR court to rule on a Rule 59 motion to reconsider he had filed. It appears that the Rule 59 motion has never been ruled upon, and that the petitioner did not renew his petition for a writ of certiorari from the denial of PCR relief.

Petitioner filed a second federal habeas action on May 26, 2000, and on August 28, 2000, Petitioner again moved for dismissal without prejudice. C/A 2-00-1578. On September 25, 2000, Judge Duffy again granted the motion.

Petitioner next filed a third PCR action on January 10, 2001, and alleged ineffective assistance of trial counsel, involuntary guilty plea, violation of due process rights, and that the Circuit Court lacked subject matter jurisdiction over his criminal case. An evidentiary hearing was convened on September 3, 2003, at which the Petitioner was present and

6

represented by N. Douglas Brannon of the Spartanburg Bar. After hearing argument from the petitioner and his counsel, Judge Baxley found the matter was both successive and barred under the statute of limitations. (Baxley App. p. 61-62).

The petitioner appealed this denial to the South Carolina Supreme Court. In the appeal he was represented by Aileen Clare of the South Carolina Office of Appellate Defense. On March 18, 2004, she made a *Johnson v. State*[1] Petition for Writ of Certiorari raising as a sole ground that "the lower court erred by summarily dismissing petitioner's application for post-conviction relief." The Petitioner made a *Pro Se* Brief on appeal. On February 3, 2005, the South Carolina Supreme Court entered its order "after consideration of the entire record as required by *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988), we deny the petition and grant counsel's request to withdraw." The Remittitur was sent down on February 22, 2005.

This action was filed on April 28, 2005, and amended on June 27, 2005. The respondent moved for summary judgment on January 6, 2006. On January 9, 2006, the petitioner was provided a copy of the motion along with an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

---

[1] Johnson v. State, 294 S.C. 310, 264 S.E.2d 201 (1988).

7

Thereafter, following an extension of time to respond, on March 8, 2002, the petitioner filed his opposition to the respondent's motion. Hence, it appears consideration of the motion is appropriate.

The respondents have attached and/or incorporated by reference the following materials.

> A. From this Court's records in <u>Pettinato v. Bessinger</u>, 4:97-2517-23BE, Respondents request this Court to take judicial notice of its files pursuant to <u>Aloe Creme Laboratories, Inc v. Francine Co.</u>, 425 F.2d 1295 (5th Cir. 1970) of the exhibits filed by the Respondents therein, including, but not limited to:
>
> From the Return, the attachments from PCR Appeal - <u>Pettinato v. State</u> (Honorable Paul Burch) before the South Carolina Supreme Court;
>
> 1. Appendix to Petition for Writ of Certiorari (including guilty plea transcript; PCR application; State's Return; Amended PCR application; PCR hearing transcript; Order of Dismissal; SCDC and Clerk of Court records) (Two Volumes);
>
> 2. <u>Johnson</u> Petition for Writ of Certiorari and Petition to be Relieved as Counsel, dated October 8, 1996;
>
> 3. Order of South Carolina Supreme Court denying certiorari, dated February 21, 1997.
>
> From the July 7, 1998 Supplemental Return, the following documents,
>
> 1. <u>Pro se</u> letter dated October 17, 1996 received by the South Carolina Supreme Court on October 18, 1996.
>
> 2. October 24, 1996 letter from Clerk to Pettinato.

3. November 20, 1996 pro se letter (2 pages) received 11-25-96.

4. November 21, 1996 pro se letter (1 page).

5. November 25, 1996 letter from the Court acknowledging receipt of two letters.

6. April 3, 1997 pro se letter to Court.

7. April 7, 1997 response from Court.

A review of the public records of the Supreme Court of South Carolina revealed these matters were the documentation provided to the state court in the original PCR appeal.

B. From this Court's records in Pettinato v. Anthony, 2:00-1578-23AJ, Respondents request this Court to take judicial notice of its files pursuant to Aloe Creme Laboratories, Inc v. Francine Co., 425 F. 2d 1295 (5th Cir. 1970) of the exhibits filed by the Respondents in that action, including, but not limited to:

1. The bound EXHIBIT volume attached to the Return, including among other items, particularly,

    A. Exhibit 8 - Pettinato v. State PCR application, 97-CP-42-2649 (10 pages).

    B. Exhibit 9 - Pettinato v. State, 97-CP-42-2649, Order of Dismissal.

    C. Respondents attach for the first time in these proceedings, the following documents from the recent PCR appeal from Judge Baxley's denial:

       1. Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, dated March 18, 2004.

       2. Appendix to the Petition (BAXLEY) (76 pages), including application for PCR filed January 10, 2001, Return and Motion to Dismiss dated July 17, 2001, PCR hearing transcript of September 3, 2003, Order of Dismissal with

9

Prejudice filed November 20, 2003, and Indictment 94-GS-42-3042.

    3. <u>Pro Se</u> Brief and Exhibits.

    4. February 3, 2005 Order of Supreme Court denying certiorari.

    5. Remittitur Letter of February 22, 2005.

## GROUNDS FOR RELIEF

In the instant federal habeas corpus petition, the petitioner alleges the following grounds for relief:

> I. Counsel failed to obtained a psychiatric expert to evaluate Pettinato on competency and criminal responsibility.
>
> A. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel wherein counsel failed to obtain an expert in psychiatry to assist the defense with respect to Petitioner's competency to stand trial and sanity at the time of alleged offense after being requested to obtain same and when an expert was available and willing to assist Petitioner.
>
>     1. Based upon discussions with the Petitioner and receipt of mental health records, counsel was aware of Pettinato's mental health treatment from 1989 through the date of the incident.
>
>     2. Counsel was aware that counsel Michael Bartosh had made a motion to have Petitioner examined by the Department of Mental Health for competency to stand trial and criminal responsibility.
>
>     3. Counsel learned that the state competency evaluations reports differed by the Petitioner's earlier treatment.
>
>     4. Counsel learned from the Petitioner's mother that she had retained a psychiatric expert.

      5. Petitioner asked counsel to obtain an independent expert for an evaluation which was ignored.

      6. Counsel failed to obtain an expert to evaluate both competency to stand trial and criminal responsibility [sanity] and to otherwise assist in the defense.

      7. The Petitioner entered a guilty plea and waived his rights when he was not competent to plead guilty.

      8. Counsel's failure to obtain a psychiatric expert also prejudiced his right to present an insanity defense.

II. Counsel's stipulation to competency to stand trial was not supported by evidence.

B. Petitioner's counsel provided ineffective assistance wherein counsel unreasonably stipulated to Petitioner's competency to stand trial and waived Petitioner's right to a full and fair competency hearing when the facts known to counsel raised a substantial question as to Petitioner's competency and there was a substantial doubt as to Petitioner's competency.

      1. Trial judge found Pettinato competent to stand trial.

      2. Counsel raised an issue as to competency after he had stipulated based upon a misunderstanding of the standard for competency to stand trial of having "absolutely no understanding whatsoever."

      3. Although counsel was aware that the Petitioner had been found competent by State Hospital examiners four months earlier, after anti-psychotic medication, counsel was aware that he had stopped taking the medications and had difficulty understanding and remembering.

III. Counsel failed to provide the Petitioner with the results and file concerning the investigation.

C. Counsel provided ineffective assistance wherein he failed to conduct an adequate factual and legal investigation, failed to keep Petitioner fully informed, misled Petitioner, and withheld vital information from Petitioner.

    1. Petitioner's counsel possessed prior counsel's files, which included State discovery material, police, ballistic, and GSR reports, correspondence, and medical records.

    2. Counsel failed to share his file with the Petitioner or reveal to Petitioner exculpatory material or impeachment material.

    3. Counsel failed to conduct further investigation based upon what he learned for the documents, insisting the only defense would be a defense of insanity.

    4. Petitioner asserts he was prejudiced because receipt of the information would have caused him to revise his decisions concerning trial strategy, plea strategy, and would not have entered a GBMI plea to murder.

IV. Counsel failed to appeal or advise Pettinato of his appellate rights.
D. Counsel provided ineffective assistance wherein counsel failed to file an appeal, failed to inform Petitioner of the means and method for perfecting an appeal, and misled Petitioner concerning his appeal rights.

    1. Prior to the plea, at trial, counsel indicated a desire to appeal.

    2. The Petitioner agreed with counsel that an appeal should be taken.

    3. Counsel never appealed or advised Petitioner how to appeal after his plea, when counsel knew he wanted to appeal.

    4. Petitioner thought counsel would appeal and attempted to communicate with counsel about the appeal, but never received a response.

       5.   Petitioner attempted to appeal too late.

V.  Claims concerning the inclusion of gun charges, the lack of a full competency hearing, the decision to testify, and the refusal to instruct on insanity and manslaughter.

E. Petitioner was denied his Sixth and Fourteenth Amendment rights.

      1.   Petitioner was informed by counsel of potential additional firearm charges two weeks prior to trial.

      2.   Counsel failed to share information with Petitioner from either the trial file or discovery.

      3.   Petitioner and counsel learned, at trial, about the two (2) additional indictments for use of firearm during a violent crime, without prior notice.

      4.   Counsel objected to the trial on the added charges on due process and jurisdictional grounds, which were overruled.

      5. After the denial, he was arraigned on the charges, but was confused and lacked recall.

      6.   A competency hearing was held, where counsel stipulated to Petitioner's competency, no witnesses were called.  He asserts he never waived his "right" for a full hearing on competency or to have a defense expert examine him.

      7.   Trial proceeded and counsel advised the jury Petitioner had committed the offense, but to consider his "state of mind" and insanity.

      8. Counsel informed defendant that he was not receiving a fair trial and would appeal.

      9.   The trial judge intimidated the Petitioner by having a bailiff inform him that if he would "go off" he would be removed from the courtroom and be chained to a wall in the next room where he could hear the trial by intercom.

13

  10. Petitioner asserts that state witnesses and friends of his wife made threats to him and his family which he overheard which intimidated him.

  11. Petitioner thought his only choice was to testify to refute the state witnesses and find a way to admit he shot his wife to support insanity but he did not know what he was doing and relied upon news articles when he testified.

  12. After the defense case, he learned the trial judge would not charge insanity or manslaughter, but only guilty, GBMI, and not guilty.

  13. This failure to charge insanity deprived him of his right to present a defense.

  14. He asserted that if he had a fair trial he would not have pled to murder, but insisted on the trial and appeal.

VI. Guilty plea not freely entered and based on ineffective assistance of counsel.

F. Petitioner's guilty plea violated Due Process because the plea was not entered knowingly, voluntarily and intelligently, was entered at a time that Petitioner was not legally competent and did not have an understanding of the consequences of the plea, was coerced, and, was entered because of the ineffective assistance of trial counsel.

  1. Petitioner wanted to complete the trial and appeal rather than plead guilty.

  2. Counsel advised him that he had two viable appellate issues in the court's failure to instruct on insanity and manslaughter and pursuing the trial on the new gun charges.

  3. Counsel advised him that if he entered a plea, he would testify for him in an appeal, one of the gun charges would be dismissed, he would be parole eligible with a life sentence for murder

and a concurrent five (5) year sentence on the remaining gun charge and potential work release.

    4. Counsel advised Petitioner that the plea offer could be revoked after the trial continued, but failed to provide advice on what he should do. Petitioner proceeded to enter the plea, so the case could be over with and the appeal process begin.

    5. Petitioner asserts that he thought he could still raise the trial issues on appeal after his plea, that counsel would testify for him, and that counsel would be provided in the appeal.

    6. He asserts that his denial of a fair trial based upon the testimony, the additional gun charges, the court's intent not to charge his defense, and his lack of psychiatric experts to support his defense coerced his plea.

    7. He asserts he would not have pleaded guilty if counsel had not advised him he would appeal the case and testify for him.

VII. State PCR procedures arbitrarily and unreasonably foreclosed his right to litigate his claims.

G. Petitioner was denied Due Process wherein he was denied his right to a meaningful and fair post-conviction relief procedure in which to adequately and properly litigate his claims for relief because he was not competent, the State unlawfully interfered with his ability to prosecute his case, the State failed to follow its own procedures, and, the State arbitrarily and capriciously applied its laws to Petitioner.

    1. At his March 20, 1996 PCR hearing, he was taken directly from his psychiatric treatment at Gilliam Psychiatric Facility where he was being treated with haldol, an anti-psychotic drug, for paranoia, suicide ideation and depression.

    2. He was transported without his legal material and was not permitted to view or obtain copies of his trial case file, only informed he

would have to get it from counsel.

    3. He was not permitted to raise all his ground adequately.

    4. He filed a second PCR action attempting to contend he was denied a full initial post-conviction relief hearing and that it was arbitrarily denied and dismissed.

    5. He obtained his trial file May 11, 2000 that contained evidence to support his initial allegations and additional grounds.

    6. He learned about exculpatory evidence, evidence to impeach, and other documents supportive of his defense.

    7. He filed a third PCR action based upon this information which was arbitrarily denied based upon the State's successiveness rule and limitations.

## DISCUSSION

Dispositive of this entire habeas corpus petition is the fact that the instant § 2254 petition is untimely. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, the petitioner's conviction became final prior to the enactment of the AEDPA and, thus, the limitations period would begin to run with the AEDPA's effective date, April 24, 1996. See, Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000). Accordingly, the limitations period expired on April 24, 1997, unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2). Here a properly filed PCR was pending until February 2, 1997, when the South Carolina Supreme Court denied the petition for a writ of certiorari in the first PCR action. Therefore, Petitioner had until February 3, 1998, to bring his federal habeas action[2], unless the time was tolled by the proper filing of a state PCR.

A state application is "properly filed," for purposes of calculating time under the AEDPA, if it complies with state procedural requirements such as timeliness and proper place of filing. See, Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361, 364,

---

[2] Petitioner did file a timely habeas corpus petition on August 4, 1997, but he voluntarily dismissed that action on September 29, 1998.

17

148 L.Ed.2d 213 (2000)("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings ... for example, the form of the document, the time limits on its delivery, the court and office in which it must be lodged, and the requisite filing fee.") <u>McSheffrey v. Angelone</u>, 172 F.3d 863 (4th Cir. 1999).

Petitioner did file a state PCR before February 3, 1998, but that action was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) because it was untimely under South Carolina law. <u>See</u>, S.C.Code Ann. § 17-27-45(a) (setting forth one year statute of limitations for pursuing post-conviction relief) and <u>Peloquin v. State</u>, 321 S.C. 468, 469 S.E.2d 606 (1996) (statute of limitations begins on July 10, 1995, for convictions which became final prior to the date of the enactment of the PCR statute). Additionally, there is no South Carolina provision for tolling the South Carolina statute of limitations during the pendency of an earlier filed PCR action.

In short, since Petitioner's second PCR was time barred under South Carolina law, it was not properly filed and the federal statute of limitations continued to run while it was pending. Petitioner filed the instant habeas almost nine (9) years too late and this petition should be dismissed on that basis.

18

## CONCLUSION

Accordingly, because Petitioner has failed to file his Petition within the time period allowed under the AEDPA, it is recommended that the instant petition be dismissed.

                Respectfully Submitted,

                Robert S. Carr
                United States Magistrate Judge

Charleston, South Carolina

June 19, 2006

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The **Serious Consequences** of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * *
> We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, *supra*; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
Post Office Box 835
Charleston, South Carolina 29402
