IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mitchell J. Pettinato, #218405, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No.: 2:05-1226-PMD-RSC |
| v. | ) | |
| | ) | **ORDER** |
| Willie Eagleton, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court upon the United States Magistrate Judge's recommendation that Mitchell J. Pettinato's ("Pettinato") petition under 28 U.S.C. § 2254 be dismiss as untimely. The record includes a report and recommendation ("R&R") of the Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A petitioner may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Petitioner filed timely objections to the R&R on July 8, 2004.

## BACKGROUND

Pettinato is confined at the Kirkland Correctional Institution of the South Carolina Department of Corrections. In 1994, a Spartanburg County grand jury indicted Pettinato for murder and possession of a firearm during the commission of a violent crime. Attorney Don Thompson represented Pettinato at a jury trial before the Honorable J. Derham Cole on November 28, 1994. After the presentation of testimony but prior to final arguments, Pettinato withdrew his plea of not guilty and entered a plea of guilty but mentally ill. On November 30, 1994, Judge Cole sentenced Pettinato to life for murder and five years for possession of a firearm during the commission of a violent crime, to run concurrently. Pettinato did not appeal his guilty plea or sentence.

On February 22, 1995, Pettinato filed his first application for post-conviction relief ("PCR")

in state court. (95-CP-42-379), wherein he alleged the following 21 grounds for relief:

1.   Ineffective assistance of counsel;
2.   Denied due process of law;
3.   Denied the right to be fully heard;
4.   Denied the right to cross examine the witnesses against me when such cross examination would have proven in most cases that witnesses were committing perjury;
5.   Although I cannot find anything in the law books regarding the behavior or the Judge and/or Prosecutor I do accuse the prosecution, acting improperly, if not plain unlawfully and using their positions to intimidate me, both while court was in session and in recess, this I believe denied me equal protection under the law;
6.   Murder was an overcharge of the actual incident and correct charge should have been manslaughter;
7.   Denied the right to speak while at my arraignment on charge of murder;
8.   Defense did not adequately investigate my case nor did they subpoena evidence that I asked for;
9.   I would like to challenge the validity have [sic] having the same punishment for someone found guilty in that guilty but mentally ill shows that a person is unable to conform to the law due to no fault of there [sic] own;
10.  Failure to provide me with any warrants and/or indictments relating to the four gun charges;
11.  Not advised of right to appeal;
12.  Counsel failed to object to improper and false statements made by the prosecutor which prejudiced the jury;
13.  Counsel failed to conduct a proper investigation both factual and legal, to determine if matters of defense could be developed, and to allow himself enought time for reflection and preparation for trial;
14.  Counsel failed, after plaintiff's request to obtain or attempt to obtain a psychiatric evaluation by an independent psychiatrist where there was reasonable cause to believe that the report of the examining psychiatrist, who was employed by the State, was prepared for the prosecution's benefit and the evaluation was not properly conducted.  Counsel should have known that plaintiff was entitled to an independent psychiatrist, under 18 U.S.C. §3006A(c), who could supply expert services "necessary" to an adequate defense;
15.  Counsel failed to move the court as to a reduced charge of voluntary manslaughter, while court was in session, although counsel claimed that he did, during recess, and the judge denied his request.  This occurred just prior to guilty plea being entered;
16.  Counsel gave erroneous advice when he told plaintiff that the court would only allow the jury to consider "not guilty," "guilty," and "guilty but mentally ill" as the only verdicts, and counsel should have known that "not

2

guilty by reason of insanity" should have included or that plaintiff stood a
good chance for a reversal on appeal;

17.     Counsel failed to request the charge on murder v. manslaughter required by
        <u>State v. King</u>;

18.     Denied "due process of law" – Plaintiff was denied "due process of law" as
        he was incompetent to stand trial and was not criminally responsible for his
        actions due to mental illness...;

19.     Abuse of discretion – it was "abuse of discretion" to allow plaintiff to stand
        trial for three gun charges that were brought to plaintiff's attention for the
        first time at his trial;

20.     <u>White v. State</u> Review – Plaintiff is seeking, and believes he is entitled to a
        "White v. State Review" so he may raise his appealable issues, as Plaintiff
        did not knowingly and intelligently waive his right to direct appeal.  Rule
        227(6) Appellate Court Rules;

21.     Plaintiff contends that he is being held in custody illegally as he is unable to
        legally plead guilty but mentally ill, and he cannot be held responsible for his
        actions when he wasn't fully aware of what he was doing an did not have
        sufficient internal controls over his actions to conform them to the
        requirements of law.

On March 20, 1996, the Honorable Paul M. Burch held an evidentiary hearing, at which

Attorney Michael Duncan represented Pettinato.  Pettinato testified on his own behalf and called his

trial attorney to testify.  Thereafter, on April 26, 1996, Judge Burch issued an order of dismissal,

dismissing the application in its entirety.  Following this dismissal, Pettinato filed a timely notice

of appeal.  On October 8, 1996, Pettinato's attorney, Lisa T. Gregory, filed a *Johnson* petition for

a writ of certiorari and a petition to be relieved as counsel.  By Order dated February 21, 1997, the

South Carolina Supreme Court denied the *Johnson* petition and granted counsel's request to

withdraw.[1]

---

[1]   In Pettinato's Objections to the R&R, he first objects that Magistrate Judge Carr
incorrectly cited February 2, 1997, as the date the Supreme Court denied certiorari on his first PCR,
when in fact, the Supreme Court denied certiorari on February 21, 1997.  Pettinato is correct in this
assertion; it appears that the Magistrate Judge's reference to February 2, 1997, instead of February
21, 1997, likely resulted from a typographical error or oversight.  Nevertheless, this oversight had
no effect on the Magistrate Judge's conclusion, as Pettinato's petition is untimely with respect to
either date.

On August 4, 1997, Pettinato, proceeding *pro se,* filed his first federal habeas corpus petition. On November 3, 1997, Pettinato filed a motion to hold the matter in abeyance to allow him to file a second PCR action to allege, *inter alia*, ineffective assistance of counsel at the PCR hearing and on appeal. On March 26, 1998, then Magistrate Judge, now United States District Judge, Margaret B. Seymour denied Pettinato's motion to stay. Pettinato then moved, on May 4, 1998, to dismiss his habeas corpus petition without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. This court granted Pettinato's motion and dismissed the petition on September 29, 1998.

Meanwhile, on November 6, 1997, Pettinato filed his second PCR application in state court, alleging, *inter alia*, ineffective assistance of trial counsel, ineffective assistance of PCR counsel, ineffective assistance of appellate counsel, and involuntary guilty plea. The Honorable Lee S. Alford held an evidentiary hearing on March 28, 2000. On June 19, 2000, Judge Alford filed an order dismissing Pettinato's second PCR application, finding that the petition was barred as successive and that Pettinato failed to present evidence to support his claim that his PCR attorney was ineffective. On May 11, 2001, the South Carolina Supreme Court dismissed Pettinato's appeal without prejudice pending resolution of a Rule 59 motion. It appears from the record that the Rule 59 motion was not ruled upon and remains pending.

On May 26, 2000, Pettinato filed his second federal habeas corpus petition. On August 29, 2000, Pettinato again moved for dismissal without prejudice. On September 25, 2000, this court

---

Additionally, Pettinato asserts that certiorari was denied on February 21, 1997, but that his appeal was dismissed on March 11, 1997, and therefore, the triggering date for the statute of limitations should be either of those dates. The court has before it only the February 21, 1997, South Carolina Supreme Court Order, and therefore, the court relies on this date. Ultimately, however, it does not matter which date the court relies upon because, as explained more thoroughly in this Order, Pettinato's second PCR was still filed more than one year after July 1, 1996.

granted Pettinato's motion.

Subsequently, on January 10, 2001, Pettinato filed his third PCR application, alleging ineffective assistance of trial counsel, involuntary guilty plea, violation of due process, and the state court's lack of subject matter jurisdiction over his criminal case. On September 3, 2003, the Honorable J. Michael Baxley held an evidentiary hearing, at which Attorney N. Douglass Brannon represented Pettinato. Thereafter, on November 3, 2003, Judge Baxley filed an order denying Pettinato's third PCR application as successive and time-barred.

On March 18, 2004, Pettinato's attorney, Aileen Clare, filed a *Johnson* petition for writ of certiorari and petition to be relieved as counsel. Pettinator filed a *pro se* brief on appeal. On February 3, 2005, the South Carolina Supreme Court entered its Order denying the petition for writ of certiorari and granting counsel's request to be relieved. The Remittitur was sent down on February 22, 2005.

Finally, on April 28, 2005, Pettinato filed the present habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging numerous grounds for relief.[2] Pettinato amended his petition on June 27, 2005. Thereafter, on January 6, 2006, Respondent Willie Eagleton ("Respondent" or "Eagleton") filed a motion for summary judgment, wherein he argues that Pettinato's entire petition "is without merit and must be dismissed either on the merits for claims actually raised and decided in the initial PCR action in 1997 or procedurally barred if sought to be raised in either the 1998 or 2000 state

---

[2] In the R&R, the court relies upon Respondent's recitation of Pettinato's grounds for relief. (R&R at 10-16.) While this recitation reflects in large part Pettinato's grounds for relief, it does not constitute an exact quotation of the grounds set forth in Pettinato's Amended Petition for Writ of Habeas Corpus. Due to the slight inconsistencies between the versions, this court incorporates by specific reference Pettinato's grounds for relief as set forth in his Amended Petition for Writ of Habeas Corpus on pages 6 through 22, rather than Respondent's recitation, which the Magistrate Judge quoted.

PCR actions or are not cognizable in a federal habeas corpus action." (Mot. at 18.) Respondent only raises the issue of timeliness in his conclusion, where he asserts that any claim not raised in Pettinato's first PCR proceeding is procedurally barred or time-barred under S.C. Code Ann. § 17-27-45. (Mot. at 35.) Pettinato filed his response in opposition to the motion for summary judgment on March 8, 2006. Subsequently, on June 19, 2006, the Magistrate Judge issued his R&R, wherein he recommends dismissal of Pettinato's § 2254 petition as untimely. Pettinato filed several objections to the R&R.

## STANDARD OF REVIEW

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendation contained in the R&R. 28 U.S.C. § 636 (b)(1). After a review of the entire record, including Pettinato's objections, the court finds the Magistrate Judge's analysis lacking in several respects, and therefore, the court expounds upon the Magistrate Judge's determination that Pettinato's petition is untimely under the AEDPA. Next, in considering Pettinato's objections, the court finds Pettinato entitled to equitable tolling due to his diligence and extraordinary circumstances. Accordingly, the court remands the matter to the Magistrate Judge for a full consideration of the merits of both Pettinato's § 2254 petition and Respondent's motion for summary judgment.

## DISCUSSION

### I.    The Magistrate Judge's Conclusion

In the R&R, the Magistrate Judge found that Pettinato's second PCR application was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) because it was untimely under South

Carolina law.  (R&R at 18.)   Accordingly, the Magistrate Judge concluded that the statute of limitations continued to run during the pendency of Pettinato's second PCR action, and therefore, Pettinato filed the present § 2254 petition almost nine years too late.  The court expounds upon the Magistrate Judge's summary conclusion with the following discussion and application of the law.

### A.   The AEDPA's Statute of Limitations

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as amended in 1996, a one-year period of limitation applies to an application for "a writ of habeas corpus by a person in custody pursuant to the judgment of a state court." 28 U.S.C. § 2244(d)(1).  The limitation period for filing a § 2254 petition concerning a specific state court judgment begins to run from the latest of four possible dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).  "[P]risoners whose convictions became final any time prior to the effective date of the AEDPA had until April 23, 1997, to file their . . . § 2255 motion[s]." *Brown v. Angelone,* 150 F.3d 370, 375 (4th Cir.1998).  Additionally, § 2244(d)(2) provides that its one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending." 28 U.S.C. § 2244(d)(2). "[U]nder § 2244(d)(2) the entire period of state post-conviction

proceedings, from initial filing to final disposition by the highest state court (whether decision on

the merits, denial of certiorari, or expiration of the period of time to seek further appellate review),

is tolled from the limitations period for federal habeas corpus petitioners . . . ." *Taylor v. Lee*, 186

F.3d 557, 561 (4th Cir. 1999).

In the present case, Pettinato's conviction became final prior to the effective date of the

AEDPA, and therefore, as the Magistrate Judge correctly pointed out, Pettinato's limitations period

began to run on April 24, 1996, the effective date of the AEDPA. *See Brown v. Angelone,* 150 F.3d

370, 375 (4th Cir.1998). Thus, Pettinato's limitations period expired on April 24, 1997, unless a

properly filed state PCR application tolled the period at any time. *See* 28 U.S.C. § 2244(d)(2).

Here, a properly filed PCR application was pending until February 21, 1997, when the Supreme

Court of South Carolina denied Pettinato's petition for a writ of certioriari. Because this first PCR

application was properly filed, Pettinato had until February 22, 1998, to timely file his § 2254

petition.

As previously outlined in the background section of this Order, Pettinato did bring a timely

§ 2254 petition on Aug. 4, 1997. However, on November 3, 1997, Pettinato filed a motion to hold

the matter in abeyance to allow him to file a second state PCR application. The court denied

Pettinato's motion to stay on March 26, 1998. Subsequently, on May 4, 1998, Pettinato moved to

dismiss his habeas petition without prejudice pursuant to Rule 41(a)(2). Magistrate Judge Seymour

prepared an R&R in which she recommended that Pettinato's motion to dismiss be granted to allow

him to exhaust his state remedies, finding specifically that Pettinato's allegation that he was denied

8

due process because he was not competent at the PCR hearing was not "obviously frivolous."[3] Upon a review of the R&R and Pettinato's objections, this court granted Pettinato's motion to dismiss without prejudice on September 29, 1998.

Next, Pettinato filed a second PCR application on October 16, 1997. In order to toll the statute of limitations, this second PCR application must have been "properly filed." *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Here, the Magistrate Judge, without a great deal of explanation,[4] concluded that this second PCR application was not properly filed because it was untimely under South Carolina law. *See* S.C. Code Ann. § 17-27-45(a); *see also Green v. State*, 353 S.C. 29, 30, 576 S.E.2d 182, 183 (2003) (stating that § 17-27-45(a) does not provide for tolling the statute of limitations where an applicant seeks federal habeas relief prior to exhausting his state remedies.").

---

[3] At the time of the court's decision to dismiss Pettinato's petition without prejudice for him to pursue this claim, the South Carolina Supreme Court had not yet addressed the issue of whether a prisoner must be competent to collaterally challenge a conviction. However, in 2004, the court did address this question, finding that it was error for a PCR judge to grant a prisoner's motion to stay PCR proceedings indefinitely until the prisoner regained competency. *Council v. Catoe*, 359 S.C. 120, 597 S.E.2d 782 (2004). Specifically, the court found that because a PCR action is a civil action, "the constitutional protections that forbid a criminal trial of a mentally incompetent defendant do not apply." *Id*. at 125, 597 S.E.2d at 784-85. Thus, the court held: "a petitioner cannot delay his collateral review of his trial proceedings due to his incompetency. If, at a future date, the petitioner regains his competency and discovers that at the original PCR hearing, his incompetency prevented his ability to assist his counsel on a fact-based claim or ineffective assistance of counsel, he may then raise that claim in a subsequent proceeding." *Id*. at 129, 597 S.E.2d at 787. The court did not mention whether the statute of limitations would apply to any subsequent proceeding.

[4] For instance, the Magistrate Judge did not mention the fact that the state court heard Pettinato's second PCR application and addressed it on the merits. Additionally, the Magistrate Judge did not mention that the second PCR was the subject of a still-pending Rule 59 motion.

With regard to the meaning of "properly filed," the United States Supreme Court has held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually proscribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see also McSheffrey v. Angelone*, 172 F.3d 863, *2 (4th Cir. Feb. 23, 1999) ("A state application is properly filed if it complies with the state procedural requirements for successive collateral attacks on a conviction, such as timeliness and proper place of filing.").

In *Carey v. Saffold*, the United States Supreme Court rejected the Ninth Circuit's conclusion that the California state court's decision to deny Saffold's state petition "on the merits" constituted an implicit ruling that the state petition was timely. 536 U.S. 214, 225 (2002). The Court stated:

> A court will sometimes address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a reviewing court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it is not merely a procedural technicality that precluded him from obtaining relief. Given the variety of reasons why the California Supreme Court may have included the words "on the merits," those words cannot by themselves indicate that the petition was timely. And the Ninth Circuit's apparent willingness to take such words as an absolute bellwether risks the tolling of the federal limitations period even when it is highly likely that the prisoner failed to seek timely review in the state courts.

*Id*. at 225-26; *see also Baker v. Horn* 383 F.Supp.2d 720, 741 (E.D.Pa. 2005) ("Thus, even though the Pennsylvania Supreme Court declined to dispose of Baker's case on the ground that Baker had withdrawn his petition, such treatment does not constitute an implicit ruling that Baker's petition was timely."). A few years after *Saffold*, the Supreme Court, in a divided opinion, held that "[w]hen a postconviction petition is untimely under state law, 'that is the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S.

10

214, 226 (2002)).  Four members of the court dissented, stating:

> Under the interpretation of that statutory provision adopted by the Court today, a petition for state postconviction relief does not constitute a "properly filed application for . . . collateral review," even if the application has been accepted, filed, and reviewed in full by the state court.  The Court's chosen rule means that a state application will not be deemed properly filed-no matter how long the state court has held the petition, how carefully it has reviewed the merits of the petition's claims, or how it has justified its decision-if the court ultimately determines that particular claims contained in the application fail to comply with the applicable state statute of limitations.  The court's interpretation of § 2244(d)(2) is not compelled by the text of that provision and will most assuredly frustrate its purpose.

*Id*. at 420 (Stevens, J., Souter, J., Ginsburg, J., and Breyer, J., dissenting).

Here, because the state court considered the merits of Pettinato's second PCR application and did not clearly rule on its timeliness, it seems that it is this court's responsibility to consider whether the second PCR application was timely filed as a matter of South Carolina law before tolling the AEDPA limitations period.  *See Merritt v. Blaine*, 326 F.3d 157, 167 (3d Cir. 2003) ("[W]e must look to state law to determine whether the state petition is 'properly filed.'"); *Fahy v. Horn*, 240 F.3d 239-243-44 (3d Cir. 2001) ("The AEDPA['s statutory tolling provision] requires us to interpret state law as we do when sitting in diversity cases."); Baker, 383 F.Supp.2d at 738 ("If a state court has rejected a postconviction petition as untimely under state law, the petition was not 'properly filed,' and the petitioner cannot be entitled to statutory tolling under § 2244(d)(2).  On the other hand, when a state court has not 'clearly ruled' on the timeliness of a state petition, it is the responsibility of the habeas court to consider whether the state postconviction petition was timely filed as a matter of state law before tolling the AEDPA limitations period.").

### B.     South Carolina Procedural Rules for PCR Application(s)

On July 1, 1995, the first statute of limitations for post-conviction relief actions in South

Carolina became effective.  *See* S.C. Code Ann. § 17-27-45(a).  This section provides that an application for PCR "must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later."  S.C. Code Ann. § 17-27-45(a).  Because Pettinato was convicted before the effective date of this statute, he had one year from the effective date within which to file an application – in other words, Pettinato had until July 1, 1996 within which to file a timely PCR application.  *See Peloquin v. State*, 321 S.C. 468, 470, 469 S.E.2d 606, 607 (1996) ("[A]ll those convicted prior to the effective date of [S.C. Code Ann. § 17-27-45(a)] should be allowed one year after its effective date to file an application.").

Here, Plaintiff timely filed his first PCR application on February 22, 1995, before enactment of S.C. Code Ann. § 17-27-45(a).  The Supreme Court of South Carolina finally denied Pettinato's *Johnson* petition on February 21, 1997.  Then, on October 16, 1997, Pettinato brought his second PCR action.  Because Pettinato filed this second application after July 1, 1996, it seems that it was untimely under South Carolina law.  However, because Pettinato raised claims including, *inter alia*, the issue of ineffective assistance of PCR counsel in this second PCR application, the court must consider whether any of his claims affect the timeliness of the petition.[5]

---

[5] As a practical matter, the court notes that it does not have a copy of Pettinato's second PCR application properly before it.  Thus, there may be some issue regarding the substance or actual claims contained in this application as it is not clear whether Pettinato asserted that he was incompetent at his first PCR proceedings or whether he asserted that § 17-27-45(c) rendered his petition timely.  With regard to Pettinato's competency, the South Carolina Supreme Court stated that a petitioner who "regains his competency and discovers that at the original PCR hearing, his incompetency prevented his ability to assist his counsel on a fact-based claim or ineffective assistance of counsel, he may then raise that claim in a subsequent proceeding."  *Council*, 359 S.C. at 129, 597 S.E.2d at 787.  Thus, while uncertainty exists, the court has some reason to believe that the South Carolina Supreme Court may allow a claim of this nature to proceed even after the statute of limitations in S.C. Code Ann. § 17-27-45(a) had run.

In *Austin v. State*, the Supreme Court of South Carolina reversed the summary dismissal of a second PCR application and remanded for an evidentiary hearing, where the petitioner alleged in his second application that his first PCR counsel was ineffective for failing to seek appellate review. 305 S.C. 453, 409 S.E.2d 395 (1991). Specifically, the court stated: "Because petitioner is entitled to the assistance of appellate counsel on PCR, and because we must craft a remedy to correct the unfairness which has occurred, we find his allegation that counsel failed to seek review in this case sufficiently states a claim for ineffective assistance." *Austin*, 305 S.C. at 454, 409 S.E.2d at 396. Thus, "[u]nder *Austin*, a defendant can appeal a denial of a PCR application after the statute of limitations has expired if the defendant either requested and was denied an opportunity to seek appellate review, or did not knowingly and intelligently waive the right to appeal." *Odom v. State*, 337 S.C. 256, 260, 263, 523 S.E.2d 753, 755, 756 (1999) ( "The one-year statute of limitations for PCR applications is not applicable to appeals filed pursuant to *Austin v. State*."); *see also Whitehead v. State*, 352 S.C. 215, 219, 574 S.E.2d 200, 202 (2002) ("We have held that the PCR statute of limitations found in S.C. Code Ann. § 17-27-45(A) (Supp. 2001) does not apply to *Austin* claims.").

In *Alice v. State*, the Supreme Court of South Carolina limited the holding of *Austin* to its particular factual situation, or in other words, to the situation where the petitioner is prevented from seeking appellate review of a denial of his or her PCR application by the action or inaction of his or her attorney. 305 S.C. 448, 452, 409 S.E.2d 392, 395 (1991). In *Alice*, the petitioner sought to file a second PCR application raising additional issues not raised in the first PCR under the rubric of ineffective assistance of the first PCR trial counsel. 305 S.C. at 449, 409 S.E.2d at 393. The court pointed out that section 17-27-90 provides:

> All grounds for relief available to an applicant under this chapter must be raised in

his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

S.C. Code Ann. § 17-27-90. However, the court stated that it has interpreted § 17-27-90 and the phrase "sufficient reason" very narrowly. 305 S.C. at 450, 409 S.E.2d at 394. Then, the court distinguished *Alice* and *Austin*, noting that "Austin never received a full 'bite' at the apple, as he was prevented from seeking any review of the denial of his PCR application," whereas Alice had "filed an original PCR application, and [had] been allowed to seek review of the ruling against him." 305 S.C. at 452, 409 S.E.2d at 395; *see also Gamble v. State*, 298 S.C. 176, 178, 379 S.E.2d 118, 119 (1989) (holding that the PCR rules "contemplate an adjudication on the merits of the original petition, one bite of the apple as it were."). Accordingly, the court held that a successive application was not allowed on this basis. *Id.*

Subsequently, in *Odom v. State*, the South Carolina Supreme Court reversed a PCR judge's order of dismissal, finding that the petitioner never received a full "bite at the apple" because both of his PCR applications were summarily dismissed before he was appointed legal counsel. 337 S.C. 256, 262, 523 S.E.2d 753, 756 (1999). Thus, the court found that "Odom's *Austin* appeal is attacking the PCR *procedure* used in his case, not the *merits* of his sentence so the one-year statute of limitations [ ] is not applicable." *Id.* at 263, 523 S.E.2d at 757. The court stated, "Odom claims that he was denied the right to appeal which was a procedural error preventing his fair 'bite' at the apple. *Austin's* policy would be frustrated if the one-year statute of limitations applied to procedural errors made by the PCR courts." *Id.*

14

In the present case, Pettinato, like Alice, clearly received a full bite at the apple, in that he timely filed an original PCR application, was represented by counsel, and sought review of the ruling with the Supreme Court of South Carolina.  Thus, he does not and cannot claim in his second PCR petition either that he requested and was denied an opportunity to seek appellate review or that he did not knowingly and intelligently waive the right to appeal.  Accordingly, upon the record currently before the court, the court finds that Pettinato's second PCR did not effectively attack the PCR *procedure* used in his case.  Because *Austin* is limited to its facts, the court finds, therefore, that Pettinato's second PCR application did not constitute an *Austin* appeal, to which the statute of limitations would not apply.  Accordingly, because the statute of limitations had expired on July 1, 1996, the court believes that Pettinato's second PCR was not "properly filed" according to S.C. Code Ann. § 17-27-45(a).  Therefore, this second PCR did not toll his time for filing under the AEDPA.[6]  *See Artuz*, 531 U.S. at 9 ("If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending*, but not *properly filed*.") (emphasis in original); *see also McSheffrey*, 172 F.3d 863 ("A state application is properly filed if it complies with the state procedural requirements for successive collateral attacks on a conviction, such as timeliness and proper place of filing.").  Ultimately, without statutory tolling, Pettinato's present § 2254 petition, filed on April 28, 2005, is untimely.

## II.     Pettinato's Objections and Equitable Tolling

In his objections to the R&R, Pettinato asserts that even if his second PCR was not "properly

---

[6]  It seems that had Pettinato's second PCR been "properly filed," his statute of limitations could be tolling at this very moment, due to the alleged unresolved Rule 59(e) motion.

filed," principles of equitable tolling should apply.  The court, therefore, addresses whether principles of equitable tolling salvage his otherwise untimely § 2254 petition.

Generally, a petitioner seeking equitable tolling bears the burden of establishing (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  *Pace*, 544 U.S. at 418 (citation omitted).  Equitable tolling is available only in "those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quotation marks omitted), *cert. denied,* 516 U.S. 832 (2004); *see also United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting the same).  Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time."  *Rouse*, 339 F.3d at 246.

Here, the court finds that Pettinato has been pursuing his rights diligently.  He filed his first PCR application approximately three months after he was sentenced.  The South Carolina Supreme Court ultimately denied this application on February 21, 1997, and less than six months later, he timely filed his first federal habeas action in this court.  Then, on November 3, 1997, believing he needed to exhaust more of his state remedies, Pettinato filed a motion to hold his habeas petition in abeyance pending exhaustion of state claims.  The court denied Pettinato's motion on March 26, 1998.  Thereafter, the court granted Pettinato's motion to dismiss to allow him to further exhaust his state claims, finding specifically that Pettinato's due process claim was not "obviously frivolous."

Further complicating the record, Pettinato filed his second PCR application, which this court now finds was not "properly filed."  However, the state court never clearly ruled on the timeliness

16

issue, and more importantly, the state court has yet to rule on a pending Rule 59(e) motion that seems to somehow have gotten lost in the mix.

The Supreme Court has addressed the apparent unfairness of the situation where petitioners spend years exhausting their state remedies only to later discover that their federal habeas relief is time-barred because the state petition was never "properly filed." *See Pace*, 544 U.S. at 416. Specifically, the Supreme Court stated: "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* (citation omitted); *see also Rhines v. Webber*, 544 U.S. 269 (2005) ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). In *Pace*, the Supreme Court stated, "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace*, 544 U.S. at 416.

Ultimately, in *Pace*, the Supreme Court refused to apply equitable tolling to save a federal habeas petition because it found that the petitioner had not pursued his rights diligently. 544 U.S. at 418. The Supreme Court stated, "not only did petitioner sit on his rights for years *before* he filed his PCRA petition, but he also sat on them for five more months *after* his PCRA proceedings became final before deciding to seek relief federal court. Under long-established principles, petitioner's lack of diligence precludes equity's operation." *Id.* at 419.

This court has come across only one case with facts somewhat similar to the present case. *See Baker*, 383 F.Supp.2d 720. In *Baker*, the District Court for the Eastern District of Pennsylvania

17

determined that the petitioner was not entitled to statutory tolling because his PCR petition had not been timely filed as a matter of Pennsylvania law. *Id*. at 743. In evaluating whether the petitioner was entitled to equitable tolling, the court found that the petitioner had pursued his rights diligently. *Id*. at 746. Then the court differentiated between the petitioner's capital convictions and the petitioner's non-capital convictions. *Id*. at 746-49. The court found that according to Third Circuit law, in the context of a capital case, "less than extraordinary circumstances may trigger equitable tolling of the AEDPA statute of limitations when rigid application of the statute would be unfair." *Id*. at 746 (quoting *Fahy*, 240 F.3d at 245) (quotations omitted). In considering the fact that the petitioner had filed a timely "protective" federal petition, which the court had dismissed, just like in the present case, the court stated, "it would be unfair to Baker not to toll the statute of limitations because it is now clear that Baker was correct to argue that his first federal petition should not have been dismissed but should have been held in suspense while he exhausted his remaining state claims." *Id*. at 747. Therefore, with respect to Baker's capital conviction, the court found that "[i]t is clear that Baker meets the lower threshold of unfairness, if not the higher standard of extraordinary circumstances, necessary for equitable tolling in capital cases." *Id*.

However, in addressing the petitioner's challenge to non-capital convictions, to which the Third Circuit applies the stricter "extraordinary circumstances" standard, the court determined that the uncertainty of Pennsylvania law regarding whether a second PCR petition would be accepted did not constitute an extraordinary circumstance preventing the petitioner from bringing his claims. *Id*. at 748. Likewise, the court stated, "[t]he fact that I dismissed Baker's timely first federal petition also does not constitute an 'extraordinary circumstance' that prevented Baker from asserting his claims." *Id*. at 748. The court explained:

My dismissal of Baker's first federal petition, while in hindsight unfair, is more analogous to the situation recently discussed by the Supreme Court in *Gonzales v. Crosby*, — U.S. —, 125 S.Ct. 2641, 2650-51 (2005). In *Gonzelez*, the Supreme Court concluded that a district court's dismissal of a non-capital habeas petition under a presumptively incorrect governing Eleventh Circuit precedent did not constitute "extraordinary circumstances" for purposes of Fed. R. Civ. P. 60(b). The Court ruled it was not "extraordinary that subsequently, after petitioner's case was no longer pending, [the Supreme] Court arrived at a different interpretation [than the Eleventh Circuit.]" Similarly, it is not "extraordinary" that the treatment of Baker's timely first federal petition would be different today.

*Id.* at 748-749 (internal citations omitted). Accordingly, the court in *Baker* found that the petitioner was not entitled to equitable tolling with respect to his non-capital convictions.[7] *Id.*

In the present case, contrary to the result in *Baker*, the court finds that this court's dismissal of Pettinato's timely filed federal habeas petition,[8] coupled with the fact that the state court did not specifically find Pettinato's second PCR untimely[9] and still has yet to rule upon a Rule 59(e) motion

---

[7] In *Rouse v. Lee*, the Fourth Circuit Court of Appeals declined to adopt an equitable tolling test that would consider the nature of the petitioner's claims. 339 F.3d 238, 250 (4th Cir. 2003). The court stated, "Neither Supreme Court precedent nor precedent from this court supports applying a different test to capital cases on collateral review." *Id.* at 254. Thus, in the Fourth Circuit, courts do not differentiate between capital and non-capital cases for purposes of the application of equitable tolling for cases on collateral review.

[8] Also, the court notes that in addition to his federal petition filed on August 4, 1997, Pettinato filed a second federal petition on May 26, 2000. Similar to the first petition, this court dismissed this second petition without prejudice on September 25, 2000, to allow Pettinato to continue exhausting his claims in state court; the court made no mention of the fact that his second PCR was not "properly filed" and would not toll his statute of limitations pursuant to the AEDPA.

[9] The court acknowledges that Petitioner asserts that his second and third PCR applications were both timely pursuant to S.C. Code Ann. § 17-27-45(c), which allows the filing of a PCR application within one year of the date of actual discovery of facts not previously presented and heard or one year after the date when the facts could have been ascertained by the exercise of reasonable diligence. The parties have not provided the court with a copy of Petitioner's second PCR application or the state court's Order of dismissal filed July 20, 2000. Without the benefit of these documents, some uncertainty exists as to the merits of Pettinato's argument. And while the court believes it unlikely that Pettinato's second PCR was timely pursuant to § 17-27-45(c), the

19

almost six years after it was filed,[10] constitute extraordinary circumstances supporting equitable tolling.  As previously mentioned, like in *Baker*, Pettinato filed a timely petition for federal habeas corpus relief, moved to hold it in abeyance for him to continue exhausting state remedies, and this court denied his request and dismissed his petition without prejudice.  It is clear from recent Supreme Court opinions that under the present circumstances, it would have been proper for the court to hold the matter in abeyance pending resolution of Pettinato's second PCR.  Thus, had this court granted Pettinato's motion to hold the matter in abeyance, his federal petition would have been timely filed, even though this court still would be waiting for the state court's resolution of a pending Rule 59 motion.  Instead, this court dismissed not only Pettinato's first federal petition, but also his second federal petition, to allow him to continue exhausting his state claims.  The court did not consider whether Pettinato's second PCR application was "properly filed" when it dismissed his federal petitions and instructed him to continue exhausting his claims in state court, and therefore, Pettinato continued to exhaust his claims in state court only to discover years later that his second PCR application, which allegedly is still the subject of a pending Rule 59 motion, was never "properly filed."  This court believes that these circumstances, when considered in their totality, are

slight uncertainty in the matter counsels in favor of equitable tolling.

[10]  Without a doubt, this case would be much easier to digest had the state court, in a timely manner, ruled upon Petitioner's Rule 59 motion, which was filed on July 31, 2000.  Assuming the state court denied this motion, Pettinato then could have refiled his *Johnson* petition with the South Carolina Supreme Court.  Assuming the Supreme Court denied his petition, as is likely under the circumstances, Pettinato's current § 2254 petition clearly would be untimely under the AEDPA because the state court denied Pettinato's third PCR application as successive and time-barred, rendering it not "properly filed."  Pettinato filed the third petition on January 10, 2001, but because it was not "properly filed," it would not toll his AEDPA statute of limitations, and therefore, his current § 2254 petition, filed on April 28, 2005, would in no way be considered timely.  Because the application of equitable tolling is so fact intensive, had the circumstances regarding the Rule 59 motion been different, this court's application of equitable tolling likewise may have been different.

exactly the sort of "extraordinary circumstances" beyond Pettinato's control which justify equitable tolling.[11] Accordingly, this court finds that equitable tolling is warranted under the particular facts of this case, namely, where the petitioner pursued his rights diligently and attempted to hold his timely federal petition in abeyance, which is that which the Supreme Court now recommends for a petitioner to do under these circumstances; where this court twice dismissed without prejudice the petitioner's federal petitions with no consideration of the fact that his second PCR was not "properly filed;" and where the state court failed to timely rule upon a *still-pending* Rule 59 motion on the petitioner's second PCR application. Finding that equitable tolling applies to the current § 2254 petition, the court, therefore, remands the matter to the Magistrate Judge for a full consideration of the merits of Pettinato's petition as well as Respondent's motion for summary judgment. The court would benefit greatly from the Magistrate Judge's complete and well-supported analysis of his decision on remand.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Magistrate Judge's R&R is adopted *only* to the extent it is consistent with this Order. However, finding the petitioner entitled to equitable tolling, the court **REMANDS** the matter to the Magistrate Judge for a full consideration of the merits of the petitioner's § 2254 petition as well as Respondent's motion for summary

---

[11] Additionally, the court notes that when it denied Pettinato's motion to hold his first federal petition in abeyance (November 3, 1997) and when the court dismissed Pettinato's first federal petition without prejudice (September 29, 1998), Pettinato's second PCR, filed on October 16, 1997, could not have been timely filed under the court's reasoning in this Order because he needed to have filed it before July 1, 1996, pursuant to S.C. Code Ann. § 17-27-45(a). The South Carolina Supreme Court determined in 1996 that "all those convicted prior to the effective date of [S.C. Code Ann. § 17-27-45(a)] should be allowed one year after its effective date to file an application." *Peloquin*, 321 S.C. at 470, 469 S.E.2d at 607.

judgment.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 21, 2006**