RECEIVED
USDC CLERK, CHARLESTON, SC

2007 AUG 29  A 10: 06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mitchell J. Pettinato, #218405, | ) ) ) | C. A. 2:05-1226-PMD-RSC |
| Petitioner, | ) ) | |
| -versus- | ) ) | **REPORT AND RECOMMENDATION** |
| Willie Eagleton, Warden, | ) ) | |
| Respondent. | ) ) | |

This habeas corpus petition under 28 U.S.C. § 2254 brought by a state prisoner proceeding <u>pro se</u> and <u>in forma pauperis</u> is before the undersigned United States Magistrate Judge for an additional report and recommendation on the respondents' summary judgment motion filed on February 5, 2007.[1]  28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The petitioner, Mitchell Pettinato, is currently confined at the Evans Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Spartanburg County.  Petitioner was indicted at the July 1994 term of the Court of General Sessions for

---

[1] The undersigned originally recommended dismissal of the petition as barred by the one year statute of limitations, however, finding that the petitioner was entitled to equitable tolling of the statute, the district judge remanded the matter for a "complete and well-supported analysis" of the issues rather than "summary conclusions."  The court also noted a preference for reliance on an "exact quotation" of the petitioner's 17 pages of grounds for relief rather than the respondent's summary because of "slight inconsistencies."

Spartanburg County for the murder of his wife and possession of a firearm during the commission of a violent crime.  Don Thompson, Esquire, represented Petitioner on the charges.  Petitioner proceeded to trial before a jury and the Honorable J. Derham Cole on November 28, 1994.  After all testimony had been presented, but prior to final arguments, Petitioner, pursuant to negotiations with the State, withdrew his plea of not guilty and entered a plea of "guilty but mentally ill". (App. p. 382). Judge Cole sentenced Petitioner to life for murder and five (5) years, concurrent, for possession of a firearm during the commission of a violent crime. Petitioner did not appeal his guilty pleas or sentence.

### A.    The First PCR Action - 95-CP-42-379 (Judge Burch)

On February 22, 1995, Petitioner filed an Application for Post-Conviction Relief. (95-CP-42-379).  In his application and a subsequent amended application, Petitioner alleged he was being unlawfully held for the following reasons:

> 1.  Ineffective assistance of counsel;
>
> 2.  Denied due process of law;
>
> 3.  Denied the right to be filly heard;
>
> 4.  Denied the right to cross examine the witnesses against me when such cross examination would have proven in most cases that witnesses were committing perjury;
>
> 5.  Although I cannot find anything in the law books regarding the behavior of the Judge and/or Prosecutor I do accuse the prosecution, acting

2

improperly, if not plain unlawfully and using their positions to intimidate me, both while court was in session and in recess, this I believe denied me equal protection under the law;

6.  Murder charge was an overcharge of the actual incident and correct charge should have been manslaughter;

7.  Denied the right to speak while at my arraignment on charge of murder;

8.  Defense did not adequately investigate my case nor did they subpoena evidence that I asked for;

9.  I having the same punishment for someone found guilty in that guilty but mentally ill shows that a person is unable to conform to the law due to no fault of there [sic] own;

10. Failure to provide me with any warrants and/or indictments relating to the four gun charges;

11. Not advised of right to appeal;

12. Counsel failed to object to improper and false statements made by the prosecutor which prejudiced the Jury;

13. Counsel failed to conduct a proper investigation both factual and legal, to determine if matters of defense could be developed, and to allow himself enough time for reflection and preparation for trial;

14. Counsel failed, after plaintiff's request to obtain or attempt to obtain a psychiatric evaluation by an independent psychiatrist where there was reasonable cause to believe that the report of the examining psychiatrist, who was employed by the State, was prepared for the prosecutions benefit and the evaluation was not properly conducted.  Counsel should have known that plaintiff was entitled to an independent psychiatrist, under 18 U.S.C. § 3006A(c), (sic) who could supply expert services necessary" to an adequate defense;

15. Counsel failed to move the court as to a reduced charge of voluntary manslaughter, while court was in session, although counsel claimed that he did, during recess, and the Judge denied his request.  This occurred just prior to guilty plea being entered;

16. Counsel gave erroneous advice when he told plaintiff that the court would only allow the Jury to consider "not guilty", "guilty", and "guilty but mentally ill" as the only verdicts, and counsel should have know that "not guilty by reason of insanity" should have been included or that plaintiff stood a good chance for a reversal on appeal.  This erroneous advice coerced the plaintiff into pleading "guilty but mentally ill". Counselor [sic] was ineffective when he allowed a plea of "guilty but mentally ill", without objection, when motions were before the court and were not ruled upon prior to the entering of the plea of "guilty but mentally ill";

17. Counsel failed to request the charge on murder v. manslaughter required by State v. King;

18. Denied "due process of law -- Plaintiff was denied "due process of law" as he was incompetent to stand trial and was not criminally responsible for his actions due to mental illness...;

19. Abuse of discretion - it was "abuse of Judicial discretion" to allow plaintiff to stand trial for three gun charges that were brought to plaintiff's attention for the first time at his trial...;

20. White v. State Review - Plaintiff is seeking, and believes he is entitled to a "White v. State Review" so he may raise his appealable issues, as Plaintiff did not knowingly and intelligently waive his right to direct appeal. Rule 227(6) Appellate Court Rules;

21. Plaintiff contends that he is being held in custody illegally as he is unable to legally plead guilty but mentally ill, and he cannot be held responsible for his actions when he wasn't fully aware of what he was doing and did not have

4

> sufficient internal controls over his actions to
> conform them to the requirements of the law.

The Honorable Paul M. Burch held an evidentiary hearing on March 20, 1996, at which Petitioner was present, testified, and was represented by Michael Duncan, Esquire. Petitioner also called his trial attorney, Don Thompson, to testify. After the hearing, Judge Burch issued an Order of Dismissal, dated April 26, 1996, dismissing the Application in its entirety.

Petitioner filed a timely Notice of Appeal. On October 8, 1996, Petitioner's court-appointed counsel, Lisa T. Gregory, Esquire, of the South Carolina Office of Appellate Defense, filed a <u>Johnson</u> Petition for Writ of Certiorari and Petition to be Relieved as Counsel. <u>See</u>, <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988). The petition presented the following question:

> Whether the lower court erred in denying the
> petitioner's application for post-conviction
> relief where there was testimony that the
> petitioner desired an appeal and counsel failed to
> file the necessary notice of intent to appeal.

Petitioner filed a <u>pro se</u> pleading to the South Carolina Supreme Court in which he raised the following questions:

> 1.  Whether the petitioner's due process rights
> were violated when Petitioner was served with a
> second indictment after the jury was impaneled and
> the petitioner was arraigned on the second
> indictment and tried with only about 5 or 10
> minutes notice?
>
> 2.  Whether the lower court erred in refusing to
> charge the jury as to voluntary manslaughter and

5

not guilty by reason of insanity when there was
sufficient evidence to submit to the jury these
two charges?

3.  Whether Petitioner had ineffective assistance
of counsel where Petitioner's mother had paid an
independent psychiatrist in advance to do an
evaluation on Petitioner and Petitioner's court
appointed attorney did not file motions to the
court seeking the evaluation?

4.  Whether the lower court erred in continuing
the trial after Petitioner's attorney stated on
the record that he had a hard time communicating
with Petitioner, Petitioner was no longer taking
his antipsychotic medicines, and where it had been
over 4 months since Petitioner was found competent
to stand trial by government psychiatrists?

5.  Whether the lower court should have ordered a
new competency hearing and evaluation to determine
if Petitioner was competent to waive his rights
and plead guilty?

By Order dated February 21, 1997, the South Carolina Supreme

Court denied the petition and granted counsel's request to

withdraw.

### B.    The First Federal Habeas Action - Pettinato v. Bessinger, 4:97-2517-23BE.

On August 28, 1997, the Honorable Margaret B. Seymour,

United States Magistrate Judge, issued an order directing

Respondents to file a return or other response to the pro se

Petition for Writ of Habeas Corpus, filed by Mitchell Pettinato,

dated August 4, 1997.  Subsequently, on or about November 3,

1997, Petitioner filed a motion to hold the matter in abeyance to

allow filing of a second state post-conviction relief action to

allege ineffective assistance of PCR counsel at the hearing and

6

on appeal.  In this pro se Petition for Writ of Habeas Corpus,

Petitioner raises the following grounds for relief:

Ground One:  Denial of effective assistance of counsel that guaranteed Petitioner by the Sixth Amendment to the United States Constitution:

1.  Defense counsel failed to obtain all of Petitioner's psychiatric records and make an adequate investigation into Petitioner's competence to stand trial and Petitioner's mental state at the time of the commission of the act for which he is imprisoned;

2.  Defense counsel never advised Petitioner of his constitutional rights, never advised Petitioner of his rights under federal and state laws, never advised Petitioner of the direct or collateral consequences of his guilty plea and never discussed anything with Petitioner regarding any trial tactics or obtaining witnesses for the defense;

3.  Defense counsel failed to investigate Petitioner's background, character, and reputation and to obtain witnesses to testify on behalf of Petitioner;

4.  Defense counsel was constitutionally ineffective when he, on his own and without conferring with Petitioner, stipulated to the Petitioner's competency to stand trial based only on the opinion of the state's psychiatric expert witness;

5.  Counsel failed to investigate the government witnesses for impeachment purposes when such investigation would have presented evidence that at least four of the witnesses were either committing perjury or could not be believed because of prior immoral acts;

6.  Counsel misrepresented Petitioner when he told Petitioner just before the guilty plea that he would testify for Petitioner on appeal, while knowing that he was not going to appeal;

7

7. Defense counsel failed to object to the refusal of the trial judge to charge the Jury as to voluntary manslaughter and not guilty by reason of insanity when counsel was aware that there was more than sufficient evidence in the record and available through due diligence to counsel, to require that the Jury be given these charges;

8. Counsel again misrepresented Petitioner when he told Petitioner just prior to the guilty plea that Petitioner always had a right to appeal violations of constitutional violations and this is not true as a matter of law;

9. Counsel failed to permit Petitioner to testify as to his version of events in his own words;

10. Counsel failed to adequately investigate the possibility of having the lesser included offense of manslaughter charged to the jury even though there was sufficient evidence to have this issue presented to the jury;

11. Counsel was ineffective when he failed to assure that the Petitioner was fully aware of all the direct and collateral consequences of his plea and that Petitioner was competent to plead guilty;

12. Counsel also pulled other tricks on the Petitioner that had Petitioner been competent to stand trial, counsel would not have gotten away with.

Ground Two: Petitioner's guilty plea was not entered knowingly, intelligently, and voluntarily, and was entered without an understanding of the direct or collateral consequences of the plea as well as entered because of ineffective assistance of counsel.

Ground Three: Abuse of discretion by trial judge and bias of trial judge on the side of the prosecution.

Ground Four: Petitioner was not competent to stand trial, was not competent to enter a guilty

plea and waive his constitutional rights, and was not criminally responsible for his actions.

On December 12, 1997, Respondents made a Return asserting that the entire matter should be dismissed either on the merits or due to a procedural bar. On March 26, 1998, Magistrate Judge Margaret B. Seymour denied Pettinato's motion to stay. Pettinato then moved, on May 4, 1998, to dismiss his habeas petition without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). Magistrate Judge Seymour recommended to the court that it grant the motion, thus allowing Pettinato to pursue his claim in state court that he was incompetent at his PCR hearing. The Honorable Patrick Michael Duffy adopted Magistrate Judge Seymour's report and recommendation, and dismissed the petition on September 29, 1998.

## C. The Second PCR Action - 1997-CP-42-2649 (Judge Alford)

On November 6, 1997, Pettinato filed a second PCR action in the state court. The new grounds he raised in this second petition were that he was incompetent during his first PCR hearing, that his first PCR counsel was ineffective, and that he was denied a full and fair first PCR hearing. He again raised several of the grounds that he had raised in the first PCR action. On June 19, 2000, the Honorable Lee S. Alford dismissed the second PCR action, finding that Petitioner failed to present evidence to support his claim that his PCR attorney was ineffective for failing to present evidence that he was

9

incompetent to proceed with the PCR hearing, and that all other claims were successive and therefore barred.

The petitioner made a pro se Motion to Alter or Amend Judgement pursuant to SCRCP Rule 59 dated July 28, 2000, and argued that, although the PCR court had ruled that he had failed to produce evidence to support his claim that PCR counsel was ineffective for failing to bring to the court's attention that he was incompetent to proceed with the earlier PCR hearing, he had been brought to the initial hearing directly from the psychiatric hospital without notice of the hearing and was unable to present his case notes and other documents, and that Judge Alford, a former probate judge, determined that Judge Burch would have recognized Petitioner's incompetence and stopped the hearing, and that Petitioner had a documented history back to 1989 of various mental illnesses. Petitioner contended that he wanted the original order clarified to address his claims set out in his answer to the Return and Motion to Dismiss and to address the effect of not being given the expert legal services he requested. Further, the court was moved to reconsider its original order or to alter and amend its ruling to address his claims that he is aware of new facts that required his conviction be vacated or grant the petitioner a new hearing so he could properly amend his application and prepare his evidence. Motion, p. 2-3.

10

On August 16, 2006, the state made a Return to the Motion and asserted that the pro se motion was not properly before the court because Donna L. Jackson, appointed attorney for Petitioner, did not sign the motion as required by Rule 11.  The state further contended that the petitioner failed to comply with Rule 59(g) by failing to provide the hearing judge with a copy of the motion.  Finally, the state asserted the motion should also be dismissed because the July 20, 2000, order contained the required findings of fact and conclusions of law as required under S.C. Code §17-27-80 (1976) and Rule 52 and that no modifications or additional hearing was necessary.

On August 16, 2006, the state filed a Motion for a Proposed Order with the Clerk and Judge Alford seeking to have the motion to alter dismissed for the reasons previously set out in the Return.

On August 16, 2006, counsel for the state sent a letter with attachments to Judge Alford requesting the motion be dismissed. On October 25, 2006, counsel for the respondents wrote Judge Alford again requesting the motion be dismissed.  On February 5, 2007, Respondents' counsel received from the Spartanburg County Clerk of Court a copy of an order signed by Judge Alford dated November 6, 2006, declaring Petitioner's motion to amend a "nullity" and declining to consider it.  Judge Alford found that the petitioner failed to comply with Rule 59(g) by failing to

11

provide the hearing judge with a copy of the motion:  The judge also concluded the motion was impermissible because it was not brought by Petitioner's attorney.  Hybrid representation is disallowed in South Carolina.  A copy of this order was served on the petitioner's PCR counsel, Donna Jackson, and the petitioner. The South Carolina Supreme Court dismissed the matter on April 9, 2007.

**D.    The Second Federal Habeas Action: 2:00-1578-23AJ.**

Pettinato filed a second federal habeas action on May 26, 2000.  Pettinato alleged that (1) he received ineffective assistance of trial counsel; (2) he was denied due process because he was not competent to stand trial; (3) he was denied due process "when he was presented with three (3) gun charges at the commencement of trial"; (4) he was denied due process "when he was denied his right to be fully heard in his defense and testify in his own words"; (5) he was denied the opportunity "to a direct appeal as of right"; (6) his guilty plea was not knowing, voluntary, and intelligently made; (7) he "was denied his Fourteenth Amendment rights to a meaningful post-conviction relief proceeding"; (8) he was denied due process "when he was denied the assistance of an independent psychiatrist to assist in the evaluation, preparation and presentation of [his] defense and where he was denied a competency hearing"; and (9) the trial court did not have jurisdiction to try him on the firearms

12

charges and to "use those charges to conduct a type of plea
negotiation in order to coerce the Petitioner into entering a
plea of guilty but mentally ill."

The Respondents made a Return to the petition asserting that
the many allegations had not been fully presented to the state
court, that his free and voluntary guilty plea waives
consideration of many of his claims, that he was competent to
stand trial and plead guilty, that his trial counsel was not
ineffective, and his other claims do not merit relief.  On August
28, 2000, Pettinato moved for dismissal without prejudice.  On
September 25, 2000, the Honorable P. Michael Duffy, United States
District Judge, granted the petitioner's motion.

**E. The Third PCR Application - 01-CP-42-0102 (Judge Baxley)**

Pettinato made a third PCR application filed January 10,
2001, and alleged ineffective assistance of trial counsel,
involuntary guilty plea, violation of due process rights, and
that the Circuit Court lacked subject matter jurisdiction over
his criminal case. Baxley App. pp. 1-44.  He asserted that he was
entitled to a third PCR because he was incompetent at his first
two PCRs and that he had newly discovered evidence.   The
Respondents filed a motion to dismiss on July 17, 2001, asserting
the matter be dismissed as time barred and successive.  A hearing
was convened on September 3, 2003, at the Spartanburg County
Courthouse at which Petitioner was present and represented by

13

appointed counsel, N. Douglas Brannon.  At the hearing the

Respondent argued that the application must be dismissed because

it is successive and time barred.  After hearing argument from

Petitioner and his counsel on the motion, Judge Baxley dismissed

the application because it was both successive and untimely.

Baxley App. p. 61-62.  In his written order of November 20, 2001,

Judge Baxley held that,

> [t]his court finds that the Applicant's claim that
> he was incompetent during his previous two PCR
> cases is not credible.  The Applicant offered no
> credible evidence to support such an allegation.
> Therefore, the court finds that the Applicant
> failed to establish sufficient reason why he could
> not have raised his current allegations in his
> previous applications for PCR.  The Applicant has
> failed to meet the burden imposed upon him to
> present a sufficient reason for his failure to
> raise these claims in his first PCR case.  Land v.
> State, 274 S.C. 243, 262 S.E.2d 735 (1980); Aice,
> 305 S.C. 448.  Accordingly, this application is
> dismissed because it is successive.
>     This court finds that the applicant offered
> no reasonable justification for his failure to
> file within the statute of limitations.
> Accordingly, this PCR application is denied
> because the applicant failed to file this
> application within the time mandates of the Post
> Conviction Procedure Act.

Baxley App. pp. 71-72.  Since Petitioner also alleged that the

trial court lacked subject matter jurisdiction, an allegation the

court found could be raised at any time, the court ruled that the

trial court did have jurisdiction.  Id. at 72.

The petitioner appealed this denial to the South Carolina

Supreme Court and was represented by Aileen Clare of the South

14

Carolina Office of Appellate Defense.  On March 18, 2004, Clare

made a <u>Johnson v. State</u> Petition for Writ of Certiorari raising

as a sole ground that "the lower court erred by summarily

dismissing the petitioner's application for postconviction

relief."

The petitioner filed a <u>pro</u> <u>se</u> brief on appeal in which he

presented the following issues:

> 1.  Did the PCR judge err in dismissing
> Petitioner's PCR application when the PCR
> application was filed within one (1) year of the
> date that Petitioner could have discovered the
> factual basis for the claims through the exercise
> of due diligence, the unique combination of facts
> warrant allowing a successive PCR application, and
> the petitioner has been denied due process
> throughout his judicial process because of the
> many procedural errors that have occurred?
>
> 2.  Did the court lack jurisdiction to try,
> convict and sentence the petitioner?
>
> 3.  Was the petitioner denied his sixth amendment
> right to the effective assistance of trial counsel
> when his trial counsel withheld vital information
> from petitioner by withholding the trial file
> until after Petitioner's post-conviction remedies
> were concluded, when counsel misled Petitioner
> concerning his options at trial and when counsel
> failed to obtain a psychiatric expert and
> evaluation of Petitioner after many requests and
> when a psychiatric expert was readily available to
> the petitioner?
>
> 4.  Was the petitioner's plea of guilty but
> mentally ill entered in violation of Petitioner's
> due process rights and entered because of the
> ineffective assistance of trial counsel?
>
> 5.  Was the petitioner's fourteenth amendment
> rights to due process violated wherein the state
> failed to disclose material evidence that would

15

have tended to exculpate Petitioner and evidence
that would have tended to impeach the state
witnesses?

On February 3, 2005, the South Carolina Supreme Court
entered its order stating, "after consideration of the entire
record as required by Johnson v. State, 294 S.C. 310, 364 S.E.2d
201 (1988), we deny the petition and grant counsel's request to
withdraw." The Remittitur was sent down on February 22, 2005.

The following materials have been made part of the record
here:

A.    PCR Appeal - Pettinato v. State, 1995-CP-42-
379 (Honorable Paul Burch)

1.    Appendix to Petition for Writ of
Certiorari (including guilty plea transcript; PCR
application; State's Return; Amended PCR
application; PCR hearing transcript; Order of
Dismissal; SCDC and Clerk of Court records) (Two
Volumes);

2.    Johnson Petition for Writ of Certiorari
and Petition to be Relieved as Counsel, dated
October 8, 1996;

3.    Order of South Carolina Supreme Court
denying certiorari, dated February 21, 1997.

4.    Remittitur - dated March 11, 1997.

B.    Pettinato v. State, 97-CP-42-2649 (Judge
Alford) (PCR II).

5.    Pettinato v. State PCR application, 97-
CP-42-2649 (10 pages) (November 6, 1997).
6.    March 28, 2000 - PCR Hearing Transcript.

7.    Pettinato v. State, 97-CP-42-2649, Order
of Dismissal. (June 19, 2000).

16

8.   Motion to Alter or Amend Judgement - July 28, 2000.

9.   Return (in opposition to Motion to Alter) - August 16, 2006.

10.  Motion for Proposed Orders August 16, 2006.

11.  August 16, 2006 - Letter from Assistant Attorney General Crum to Judge Alford.

12.  October 25, 2006 - Letter from Assistant Attorney General Crum to Judge Alford.

13.  November 6, 2006 - Order Dismissing <u>Pro Se</u> Motion to Alter, received by Respondents February 5, 2007.

C.   <u>Pettinato v. State</u>, 2001-CP-42-102 (Judge Baxley) (PCR III):

14.  <u>Johnson</u> Petition for Writ of Certiorari and Petition to be Relieved as Counsel, dated March 18, 2004.

15.  Appendix to the Petition (Baxley) (76 pages), including application for PCR filed January 10, 2001, Return and Motion to Dismiss dated July 17, 2001, PCR hearing transcript of September 3, 2003, Order of Dismissal with Prejudice filed November 20, 2003, and Indictment 94-GS-42-3042.

16.  <u>Pro Se</u> Brief and Exhibits.

17.  February 3, 2005, Order of Supreme Court denying certiorari.

18.  Remittitur Letter of February 22, 2005.

## HABEAS ALLEGATIONS

In the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, Petitioner makes the following allegations, as quoted verbatim from his amended petition of June 27, 2005:

A)   Petitioner was denied his Sixth Amendment right to the effective assistance of counsel wherein counsel fails to obtain an expert in psychiatry to assist the defense with respect to Petitioner's competency to stand trial and sanity at the time of alleged offense after being requested to obtain same and when an expert was available and willng to assist Petitioner.

1)   Counsel was made aware of Petitioner's history for treatment of mental illnesses from 1989 through the date of the alleged incident.

2)   Counsel obtained Petitioner's mental health records and had them available to him prior to trial.

3)   As a result of what was known to counsel, from reviewing the mental health records, speaking to others concerning Petitioner's mental health problems, and speaking with Petitioner, counsel knew that Petitioner's competency to stand trial and his sanity at the time of the alleged incident were a substantial and significant question.

4)   Counsel was aware that attorney Michael Bartosh had filed a motion to have Petitioner examined and Petitioner was sent to the William S. Hall Institute for evaluation by at least two (2) State Psychiatrists, that those psychiatrists found Petitioner competent and criminally responsible, and that a competency hearing was eventually going to he held as required by law, so an adequate determination could be made regarding Petitioner's competency to stand trial.

5)   Among other things, counsel was aware that the reports of the psychiatrists for the State were most likely prepared for the benefit of

18

the prosecution as the diagnosis of the State differed significantly from the diagnosis received by those psychiatrists whom had been treating Petitioner in the past.

6)    Petitioner's mother notified counsel that she was trying to obtain a psychiatric expert to examine Petitioner, that she made an initial payment to that expert, and, that the expert was willing and available to assist Petitioner.

7)    Petitioner also asked counsel to obtain an expert to have Petitioner evaluated, however counsel ignored Petitioner after learning that Petitioner wanted a court appointed defense psychiatrist.

8)    Counsel unreasonably failed to obtain a psychiatric expert to evaluate Petitioner's competency to stand trial, sanity at the time of the alleged offense, and, to assist in the examination, preparation and presentation of the defense when an expert had already agreed to assist Petitioner, was available, counsel was notified of this, and counsel intended to pursue the insanity defense at trial.

9)    Petitioner was prejudiced by counsel's conduct in that the Petitioner was tried, entered a guilty plea, waived Constitutional rights, and was convicted and sentenced to life imprisonment, when he was not competent, or, there was a reasonable doubt as to his competency to understand and waive his Constitutional rights.

10)    Petitioner was also prejudiced in that he went through trial without the assistance of an expert in psychiatry and was not permitted a full and fair opportunity to put the findings of the State's experts to an adversarial form of testing or offer evidence from his own expert to support the insanity defense.

B)    Petitioner's counsel provided ineffective assistance wherein counsel unreasonably stipulated to Petitioner's competency to stand trial and waived Petitioner's right to a full and fair competency hearing when the facts known to counsel

19

raised a substantial question as to Petitioner's competency and there was a substantial doubt as to Petitioner's competency.

1)    Petitioner appeared at a competency hearing shortly before trial.

2)    No witnesses were called, Petitioner was not questioned, and, counsel took it upon himself to unreasonably stipulate that the Petitioner was competent.

3)    The trial Judge found that Petitioner was competent, based upon counsel's stipulation, the reports of the State's experts, and, a State expert being present to testify that Petitioner was competent.

4)    Counsel then raised an issue regarding the question of Petitioner's competency, was admonished by the trial judge for raising the issue after stipulating to Petitioner's competency, and counsel then claimed that Petitioner was competent but that his understanding was "slow."

5)    Counsel stated that he would only say that Petitioner was not competent if Petitioner had "absolutely no understanding whatsoever," and that is not the correct standard.

6)    Counsel unreasonably stipulated to Petitioner's competency to stand trial in spite of what was known to counsel at that time, without the benefit of an opinion from a defense psychiatrist or having Petitioner examined by an independent or defense psychiatrist, even though Petitioner's competency exam by the State Psychiatrists occurred some four and one—half (4½) months earlier, occurred after Petitioner had been stabilized on anti—psychotic medication, and when counsel knew that Petitioner had stopped taking his medications and had difficulty understanding and retaining in memory what was going on around him and what he was told.

7)    The trial judge found that Petitioner was competent, based on the stipulation of trial

counsel and government experts' reports while
Petitioner was provided no full and fair
opportunity to contest those reports or present
further evidence raising a reasonable doubt as to
Petitioner's competency.

8)   Petitioner was prejudiced in that he was
not competent, did not have an understanding of
the law in relation to the facts, was denied his
right to put the State's finding of competency to
an adversarial form of testing, and was convicted
at a time that he was either not competent or that
there was a bona fide doubt as to his competency.

C)   Counsel provided ineffective assistance
wherein he failed to conduct an adequate factual
and legal investigation, failed to keep Petitioner
fully informed, misled Petitioner, and withheld
vital information from Petitioner.

1)   Prior to trial, counsel possessed the
trial file, which contained materials gathered by
other Public Defenders, such as Charles Sanders,
Thomas Dillard, and Michael Bartosh, who were
appointed to represent Petitioner on various
matters since the date of Petitioner's arrest.

2)   The file contained, among other things,
notes, written police reports, statements to
police made by alleged witnesses to the alleged
incident, discovery material obtained from the
prosecution, some of Petitioner's medical records,
correspondence between the Public Defenders Office
and various individuals, and, the results of a
gunshot residue test that had been conducted on
Petitioner's hands.

3)   Counsel failed to share the information
contained in the file with the Petitioner, never
at any time informed Petitioner as to the
existence of the exculpatory evidence contained in
the file and the nature of its value to the
Petitioner, and Petitioner never at any time knew
of the existence or contents of the file.

4)   Counsel unreasonably and erroneously
failed to conduct a further investigation based on
what he should reasonably have known from the

21

documents and other evidence contained in the
file, and continued to insist that Petitioner's
only defense was the insanity defense and further
withheld all of the vital information from the
Petitioner so as to prohibit Petitioner from
taking part in any of the important decisions
regarding Petitioner's trial, defense and Federal
Constitutional rights.

5)    Petitioner was prejudiced by counsel's
unprofessional and erroneous conduct in that the
exculpatory and impeachment evidence contained in
the file, or which also would have been learned
through a diligent investigation, would reasonably
have changed the entire outlook of the trial.

6)    Petitioner was prejudiced in that he had
no opportunity to assist in making a decision as
to his defense theory or an opportunity to call
additional witnesses, to obtain experts in
psychiatry, ballistics and gunshot powder residue,
or to make other important decisions regarding the
trial process.

7)    Had Petitioner been informed of the
existence and the value of these documents,
Petitioner would not have cooperated with
counsel's defense theory or strategy and would not
have proceeded to trial under the insanity defense
theory, would not have testified and incriminated
himself, would have called additional witnesses,
would have used the documents to impeach the
State's witnesses, would have sought experts to
support a defense of not guilty, and would never
have entered a plea of GBMI to murder.

8)    Counsel should reasonably have been
aware that he had a duty to keep Petitioner fully
informed about important matters that came to
counsel's attention prior to trial and during
trial, including any and all potential defenses,
all exculpatory evidence or evidence that could be
used to impeach state witnesses, any evidence that
would tend to raise a reasonable doubt as to
Petitioner's guilt, and, any information that
would allow Petitioner to take part in the
decisions related to trial and defense matters,

22

matters as to who to call as witnesses and what experts to obtain for the defense.

9) Counsel unreasonably failed in that duty as he failed to keep Petitioner fully informed concerning important trial matters and withheld all of the vital information that Petitioner needed in order to participate in his trial and defense and in order for Petitioner to make intelligent decisions whether to invoke or waive his Constitutional rights.

10) Petitioner made numerous requests to obtain his file and was never provided his file until approximately May 11, 2000, long after the trial was over, the withholding of information was used to induce or otherwise coerce a guilty plea, and Petitioner's post-conviction relief process was over with.

11) As a result of counsel's unreasonable and unprofessional conduct, Petitioner was denied a fair trial, was denied his right to the assistance of counsel, and his right to call witnesses in his favor was abridged.

B) Counsel provided ineffective assistance wherein counsel failed to file an appeal, failed to inform Petitioner of the means and method for perfecting an appeal, and misled Petitioner concerning his appeal rights.

1) Counsel continually stated during trial that Petitioner was not being given a fair trial and that counsel would appeal.

2) Petitioner agreed with counsel that counsel should appeal, each time that counsel stated that "they're not doing you right."

3) Counsel never filed the appeal, never provided Petitioner with the information concerning the means, method, or time limit for filing an appeal, and he knew that petitioner wanted his appeal.

4) Petitioner called counsel's office on the day of the plea to inquire into his appeal.

5)    Counsel did tell petitioner just before the entering of the guilty plea, that he would file an appeal and would "probably testify for you on appeal," and Petitioner reasonably expected counsel to file an appeal, raise the constitutional violations that had occurred, and assure that Petitioner received the assistance of appellate counsel.

6)    Petitioner sent counsel letters from the SCDC, beginning within the ten (10) day limit for filing the appeal, in which he inquired into his appeal and requested counsel to send Petitioner the trial file if counsel was not going to file an appeal.

7)    Petitioner never received a reply and Petitioner could not file an appeal because he did not know of the means, method or time limit for filing the appeal, and when he learned of the time limit for filing the appeal, the SCDC refused to allow him access to the law library or someone who could assist in perfecting an appeal.

8)    Petitioner attempted to file the appeal by writing to the Clerk of Court for Spartanburg County only to be informed that the time limit had expired and that Petitioner most likely could not obtain a waiver to file an appeal.

9)    As a result of counsel's conduct, petitioner lost his right to appeal and his right to counsel on direct appeal.

E)    Petitioner was denied his Sixth and Fourteenth Amendment right to a fair trial.

1)    Petitioner was informed by counsel, some one or two weeks prior to trial, that the State was thinking of indicting Petitioner for using a firearm during the commission of a violent crime.

2)    At no time did any of the appointed attorneys share any information with Petitioner as to the existence of the documents contained in the trial file or obtained from the prosecution.

24

3)    Petitioner proceeded to a trial by jury on November 28, 1994 wherein petitioner's counsel and later the Petitioner, were first given notice of two (2) additional gun charges that had allegedly been presented to the grand jury.

4)    Petitioner had no prior notice whatsoever that he was going to be indicted and charged with two (2) additional gun charges and was never served with indictments related to these charges.

5)    Counsel objected based on Due Process grounds that there was no notice, that it violated Due Process for a man to be called to trial on charges and served with those charges at the commencement of trial, and that the court lacked jurisdiction over those charges.

6)    The trial judge overruled counsel's objections and ruled that the Court had jurisdiction and Petitioner's counsel should have been aware that the charges would be brought.

7)    The trial judge also held that Petitioner should have been aware that since a gun was used to shoot the victim, that Petitioner had to have unlawfully carry the pistol and had to point the pistol, and therefore, this justified the charges being brought at the commencement of trial.

8)    Petitioner was then arraigned on all charges, asked about his understanding of the charges and whereas Petitioner was confused, could not recall what the charges were, and did not understand why the charges were brought, petitioner simply stated, "Just go on and do what you are going to do."

9)    A competency hearing commenced, which consisted of counsel stipulating to Petitioner's competency to stand trial and the trial judge unreasonably ruled that Petitioner was competent, without making an adequate inquiry and when their was a reasonable probability that Petitioner was not competent.

25

10) Petitioner was not questioned, there were no experts called to testify for the State or for the petitioner, Petitioner's only exam to determine his competency occurred at the hands of State experts some four (4) months prior to trial, and Petitioner did not waive his right to a full and fair competency hearing or to have a defense expert examine him and assist in what he was told was his only defense.

11) Petitioner proceeded to trial by jury and counsel informed the jury that Petitioner committed the offense but that the jury should consider what Petitioner's state of mind was at the time of the alleged offense. Counsel was proceeding under his theory that the defense of insanity was Petitioner's only defense.

12) Counsel continually informed the Petitioner that he was not receiving a fair trial and that counsel would appeal.

13) During the trial the trial judge intimidated Petitioner by having a bailiff/jail guard inform Petitioner that if be were to "go off," that the trial judge would have Petitioner taken out in chains and chained to a wall in the next room where the petitioner would then listen to his trial aver an intercom system.

14) Petitioner was intimidated and scared as Petitioner did not understand and believed that he was going to be chained up on a wall.

15) Petitioner's perception of the matter at that time, because of having no prior experience and because of his mental condition, was that he should do nothing and try to obtain help on appeal or he would be punished.

16) During trial, some of the State's witnesses and friends of Petitioner's wife, made threats to petitioner and Petitioner's family of which petitioner heard while Petitioner was sitting at the defense table and this also intimidated petitioner.

26

17) Petitioner attempted several times to speak to counsel while trial was in process and counsel only kept informing Petitioner to keep quiet.

18) Petitioner started having hallucinations and then believed that counsel, the prosecutor and the judge had conspired to deprive him of a fair trial, and, that he should go along with what was taking place and then seek assistance on appeal, or be would be punished.

19) Petitioner reasonably believed that he had no other choice other than to testify in an attempt to challenge the false and hearsay testimony of the State's alleged witnesses, to find a way to admit that he shot his wife, but didn't know what he was doing so as to attempt to add some support to the insanity defense theory, and Petitioner relied on the previous testimony of some of the witnesses, what he had heard on the news and read in newspapers, and some of what he could recall, when he testified.

20) After Petitioner and the rest of the defense witnesses finished testifying, a recess was taken and petitioner was told by his counsel that the trial Judge was not going to charge the jury as to the defense of insanity or manslaughter and was only going to charge the jury as to guilty, guilty but mentally ill (GBMI), and not guilty.

21) The trial judge unreasonably and unlawfully deprived the Petitioner of his Federal constitutional right to put up a defense, while knowing that the insanity defense was petitioner's sole defense and after hearing Petitioner testify and incriminate himself based on that defense. He also ruled that the jury could find Petitioner guilty based on two (2) verdicts while only allowing the jury one (1) verdict in which to find Petitioner not guilty, all in violation of State Statutes and petitioner's Sixth and Fourteenth Amendment right to have the jury consider his theory of defense.

22) Petitioner was prejudiced in that had he

27

been provided a fair trial, had the effective assistance of trial counsel, been kept fully informed, and had not been intimidated by the trial judge, he would have assisted in the trial process, assisted with making important decisions, completed the trial process and then appealed, and, would have never entered a plea of guilty or GBMI to murder.

F)    Petitioner's Guilty Plea violated Due Process because the plea was not was not entered knowingly, voluntarily and intelligently, was entered at a time that Petitioner was not legally competent and did not have an understanding of the consequences of the plea, was coerced, and, was entered because of the ineffective assistance of trial counsel.

1)    Petitioner re—asserts and repeats all grounds and supporting facts as stated in this Petition, in the accompanying Affidavit, and in the accompanying Memorandum of Law, as if repeated verbatim herein.

2)    After Petitioner learned that his defense was unlawfully stripped from him, and based on everything else that was known to petitioner at that time, Petitioner wanted to complete the trial process and begin the appeal process as soon as possible.

3)    Counsel discussed with petitioner, the matter concerning the plea offer of the Solicitor and Petitioner responded that he did not want to plead guilty.

4)    Counsel informed Petitioner that he had at least two (2) strong issues for appeal which were that the trial judge refused to charge the jury as to insanity or voluntary manslaughter and calling his case on the gun charges without notice, and stated that if he went ahead and entered the plea that counsel would "probably testify for you on appeal."

5)    Counsel also inform Petitioner that the other gun charges would be dismissed, that the trial judge would sentence Petitioner to life for

28

murder and five (5) years concurrent for the one (1) gun charge so Petitioner would be eligible for parole, and, that Petitioner would be eligible for something called work release.

6)    Counsel then informed Petitioner that he had to hurry because the Solicitor could withdraw the plea offer at any time and the judge was getting ready to call Petitioner and counsel back into court to continue with the trial.

7)    Petitioner's mother asked Petitioner, in the presence of counsel, if it was legal for the trial judge to take away his defense, to which Petitioner said, "I guess so because he just did it to me."

8)    Petitioner asked counsel "what should I do?" Counsel simply stated, "it's up to you but you have to hurry."

9)    Petitioner asked again, "what should I do," however, counsel never provided Petitioner with any advice and simply stated, "It's your decision, let me know what you're going to do because we have to get back into the court room right now." Petitioner then stated, "O.K., let's do it." Counsel asked, "do what?" Petitioner responded, "let's do this and get this over with because I have to get out of here."

10)    Petitioner and counsel went into the courtroom and the judge asked Petitioner questions regarding the entering of a guilty plea.

11)    Petitioner answered the questions so the case would be over with, the appeal process could begin, and based on what he understood.

12)    At the time of entering the plea, Petitioner understood that he had at least two (2) issues for appeal that would most likely have reverse his conviction, two (2) of those issues being: (1) that he had no prior notice of the additional gun charges before trial; and, (2) the trial judge's refusal to charge the jury regarding the insanity defense and voluntary manslaughter, after Petitioner invoked his right to testify and

waived his Fifth Amendment right to self incrimination, based on the insanity defense.

13) Petitioner understood that he could always raise violations of his Constitutional rights on appeal, that an appeal would be filed by counsel, that counsel would probably testify for Petitioner on appeal, and that Petitioner would be provided counsel for appeal.

14) Petitioner also understood that the other gun charges would be dismissed, that he would be eligible to be released upon parole, and, that after he was sent from a mental hospital to prison he would be eligible for something called work release.

15) Petitioner felt coerced into entering the plea of guilty because he was denied a fair trial, was told that he could not have the jury consider his defense after he had taken the stand and incriminated himself in support of that defense, and because he was not permitted to obtain a psychiatrist for the defense to examine him and explain to the jury about his mental illnesses, the memory problems, and the problems with him being in a dissociative state at times.

16) Petitioner also felt that he was coerced because of the gun charges that were added without any notice at the beginning of trial, because counsel had stated just prior to the plea that he was going to file an appeal and would probably testify for Petitioner on appeal, because the trial judge was going to allow the jury two (2) methods for finding Petitioner guilty and only one (1) method for finding the petitioner not guilty, and, where counsel would not provide Petitioner with any advice when petitioner asked, "what should I do."

17) Petitioner could not make a voluntary and intelligent decision when vital information contained in the trial file was withheld from him and neither counsel, nor anyone else, explained to him the value of the exculpatory evidence or what his rights were as far as obtaining experts to assist him.

30

18)  If counsel would not have stated that he was going to file the appeal and would probably testify for Petitioner on appeal, then the Petitioner would not have entered a guilty plea as Petitioner did not wish to waive his right to a direct appeal, did not waive that right, and, there is no valid waiver of his right to appeal.

G)   Petitioner was denied Due Process wherein he was denied his right to a meaningful and fair post-conviction relief procedure in which to adequately and properly litigate his claims for relief because he was not competent, the State unlawfully interfered with his ability to prosecute his case, the State failed to follow its own procedures, and, the State arbitrarily and capriciously applied its laws to Petitioner.

1)   Petitioner was taken to his first PCR hearing, on March 20, 1996, directly from the Gilliam Psychiatric Facility of the SCDC where he was being treated for paranoia, suicidal ideation, and depression.

2)   While at the Gilliam Facility, Petitioner was provided with anti—psychotic medication, i.e. haledol, etc., and was taken off from the medication shortly before his hearing, was discharged from the facility at the convenience of the State so he could be taken to the hearing, was taken back to the facility for further treatment after the hearing was over, and was then taken back to his assigned institution some eight (8) after his treatment ended.

3)   Petitioner was prohibited by the SCDC, from taking any of his legal material regarding the PCR matter, with him to the hearing and notified his PCR counsel and the judge of this fact.

4)   Prior to the hearing, Petitioner made numerous requests to view his trial case file and obtain copies of the documents.

5)   During the hearing Petitioner requested to view his PCR counsel's file and to obtain copies of the documents in that file, only to be

informed that if he wanted a copy, he would have to contact trial counsel.

6)    The State failed to properly follow its procedure and failed to allow all grounds to be raised adequately.

7)    Petitioner filed a second PCR Application attempting to raise the ground that he was denied a full and fair PCR proceeding and his PCR was arbitrarily denied and dismissed.

8)    Petitioner obtained his trial file on or about May 11, 2000 which contained evidence to support his grounds for relief raised in the first PCR, presented new supporting facts, and notified Petitioner of the existence of other grounds for relief.

9)    Petitioner learned for the first time, of the existence of exculpatory evidence, evidence to impeach the State witnesses, and documents that would have permitted Petitioner to make an intelligent choice among the courses of action open to Petitioner concerning, among other things, his defense, his constitutional right to call witnesses for his defense, whether or not to testify and incriminate himself, and, whether or not to waive any of his Federal constitutional rights.

10)    Petitioner filed a third PCR based on the contents of the trial file, a hearing was held wherein Petitioner was arbitrarily and capriciously denied the right to testify and present evidence in his favor, and he was denied the right to develop the facts.

11)    The PCR matter was then arbitrarily and capriciously denied and dismissed.

12)    The State successiveness rule and limitations rule were both arbitrarily, capriciously and unreasonably applied to Petitioner so as to foreclose Petitioner's right to raise grounds for relief that he had no other opportunity to raise.

Petitioner's Amended Habeas Corpus Petition pp. 6-22.

The petitioner was provided a copy of the respondents' summary judgment motion on February 5, 2007, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The petitioner responded to the motion on April 26, 2007. Thereafter, the undersigned issued a report and recommendation on June 19, 2006, in which it was recommended that the petition be dismissed as untimely. On September 21, 2006, the Honorable Patrick Michael Duffy, United States District Judge, found that the petitioner was entitled to equitable tolling of the AEDPA statute of limitations and remanded the case to the undersigned "for a full consideration of the merits of the petitioner's § 2254 as well as Respondent's motion for summary judgment."

On October 26, 2006, a hearing before the undersigned was held at which Petitioner moved to amend his petition. Petitioner's motion was granted and the respondent was also given time to supplement it's summary judgment motion following the filing of the amended petition.

On November 14, 2006, Petitioner notified the court that he had decided not to file an amended complaint. On February 5, 2007, the respondent filed a second motion for summary judgment

33

and on February 7, 2007, Petitioner was provided another <u>Roseboro</u>
order.  Thereafter, Petitioner was granted two extensions of time
to file a response, and, on April 26, 2007, he filed his
opposition and various exhibits.  Hence, it appears consideration
of the petition and the respondent's summary judgment motions is
appropriate.

**HABEAS STANDARD OF REVIEW**

The present habeas corpus petition has a delivery date of
April 22, 2005, pursuant to <u>Houston v. Lack</u>, 487 U.S. 266, 108
S.Ct. 2379 (1988)  Accordingly, the provisions of the
Antiterrorism and Effective Death Penalty Act ("AEDPA") apply to
this case.  <u>Lindh v. Murphy</u>, 117 S.Ct. 2059 (1997).  Under the
AEDPA, federal courts may not grant habeas corpus relief unless
the underlying state adjudication:

> 1.  resulted in a decision that was contrary to,
> or involved an unreasonable application of clearly
> established federal law, as determined by the
> Supreme Court of the United States; or
>
> 2.  resulted in a decision that was based on an
> unreasonable application of the facts in light of
> the evidence presented at the state court
> proceeding.  28 U.S.C. § 2254 (d)(1)(2).

The first requirement has been explained by the United
States Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495
(2000)(plurality opinion).  Writing for a plurality of the Court,
Justice O'Connor held that,

> ... § 2254(d)(1) places a new constraint on the
> power of a federal habeas corpus court to grant a

34

> state habeas petitioner's application for a writ
> of habeas corpus with respect to claims
> adjudicated on the merits in state court.  Under §
> 2254(d)(1) the writ may issue only if one of the
> following two conditions is satisfied – the
> state-court adjudication resulted in a decision
> that (1) 'was contrary to. . . clearly
> established federal law as determined by the
> Supreme Court of the United States,' or (2)
> 'involved an unreasonable application of . . .
> clearly established Federal law as determined by
> the Supreme Court of the United States.'

Id. at 1523 (O'Connor, J., concurring in judgment).

With respect to the "unreasonable application" clause,
Justice O'Connor further explained that "a federal habeas court
may not issue the writ simply because that court concludes in its
independent judgment that the relevant state-court decision
applied clearly established federal law erroneously or
incorrectly.  Rather, that application must also be
unreasonable."  Id. at 1522.

In sum, the AEDPA amendments exalt the role that a state
court's decision plays in a habeas decision by specifically
directing the federal court to make the state court decision the
starting point of federal review; only if that decision deviates
from the standard recited in § 2254(d) can a habeas court grant
relief.

## EXHAUSTION AND PROCEDURAL BYPASS

Further, federal habeas relief is available only to a person
held in custody in violation of the Constitution or laws or
treaties of the United States who has exhausted his state

remedies.  The statute provides:

> (b)(1) An application for a writ of habeas corpus
> on behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> unless it appears that—
>
> (A) the applicant has exhausted the remedies
> available in the courts of the State; or
>
> (B)(I) there is an absence of available State
> corrective process; or
>
> (ii)  circumstances exist that render such
> process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

Thus, to satisfy the statutory requirements, a petitioner

first must exhaust his claims by presenting them to the highest

state court with jurisdiction to decide them before seeking

relief through the federal writ of habeas corpus.  <u>Matthews v.</u>

<u>Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997).  Indeed, a claim is

unexhausted unless the substance of a petitioner's claims are

"fairly presented" to the state courts.  The <u>Matthews</u> court

explained,

> The ground relied upon must be presented face-up
> and squarely; the federal question must be plainly
> defined. Oblique references which hint that a
> theory may be lurking in the woodwork will not
> suffice.  In other words, fair presentation
> contemplates that both operative facts and the
> controlling legal principles must be presented to
> the state court.

<u>Id.</u>

36

If, however, a habeas petitioner has not presented certain issues to the state's highest court, the claim "nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if petitioner attempted to raise it at this juncture." Georgia v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996). However, since the Petitioner has no further way to exhaust his unexhausted claims, he is not required to attempt to do so; his claims are deemed technically exhausted for habeas purposes. Matthews v. Evatt, 105 F. 3d 907 (4th Cir. 1997).

Although the claims here are technically exhausted, they are nonetheless unreviewable on the merits because an adequate and independent state law ground, state procedural bar or bypass, is sufficient to uphold the petitioner's convictions. Where a petitioner fails to comply with a state procedural rule, and that failure provides an adequate and independent ground for the state's denial of relief, federal review will also be barred if the state court has expressly relied on the procedural default. Harris v. Reed, 489 U.S. 255 (1989); Coleman v. Thompson, 501 U.S. 722, 735 (1991). Additionally if a petitioner fails to present a ground for decision, so the state court has nothing upon which to rule, that is a default barring review on the merits here as well. Coleman 501 U.S. at 735; Teague v. Lane, 489 U.S. 288 at 299 (1989). In other words, where the state

court has not had the opportunity to apply its own procedural bar the federal court will nevertheless bar the claim where application of the bar is clear.  Teague, 489 U.S. at 297-98; Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990).

Nonetheless, a petitioner may overcome the default by showing cause for the default and prejudice therefrom, or actual innocence.  See, e.g., Harris v. Reed, 489 U.S. 255 (1989).

### DISCUSSION

A review of the record and relevant case law reveals that Petitioner is not entitled to habeas corpus relief.

Petitioner brought a plethora of allegations of ineffective assistance of trial counsel, errors by the trial judge, and derivative claims that he was mentally incompetent at the time he entered his plea of guilty but mentally ill.  He contends that counsel's ineffectiveness rendered his plea unknowing and involuntary and, that but for his counsel's ineffective assistance he would not have pled guilty but would have insisted on allowing the jury to decide whether he was guilty.

Most of the ineffective assistance allegations concern nonjurisdictional matters which occurred prior to Petitioner's plea; these claims are waived by entry of Petitioner's guilty plea, if valid, and cannot be reviewed on the merits here.  It is beyond cavil that valid guilty pleas waive all but jurisdictional claims up to the time of the plea.  Tollett v. Henderson, 411

38

U.S. 258, 266-67 (1973) (holding that a guilty plea represents a break in the chain of events which has preceded it in the criminal process); Boykin v. Alabama, 395 U.S. 238, 243 (1969) (finding that a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial)). This waiver includes constitutional claims and effectively foreclose most claims from collateral attack. See, United States v. Broce, 488 U.S. 563, 569 (1989).

Therefore, the initial question is whether the plea was valid.

**WHETHER PETITIONER ENTERED A VALID GUILTY PLEA**

The first PCR court found that Petitioner's guilty but mentally ill plea was a knowing, intelligent, and voluntary valid plea. Burch App. p. 520. That decision is fully supported by the record which reveals a guilty plea made with the advice of counsel, voluntarily given after Petitioner was advised on the record of his trial rights and possible sentences, and supported by a substantial factual basis. See, Boykin v. Alabama, 395 U.S. 238, 24344, 89 S.Ct. 1709 (1969).

This case involved a jury trial that evolved into a negotiated plea. The court fully advised the petitioner of his rights and then the petitioner stated that he wanted to testify. Burch App. Pp. 249-252. Petitioner gave lengthy, detail rich testimony in which he admitted that his wife left him, that he

threatened to kill his wife and her paramour, Burch App. 275-276, 317, 324, that he got a gun from a pawn shop on the day before he killed his wife, Burch App. p. 327, and that he then repeatedly shot his wife in the back of her head killing her, Burch App. p. 297, 303.  The defense also called James Sporn, Petitioner's friend, coworker and roommate, who testified about the petitioner's mental state prior to the shooting and that Petitioner had told him that he was going to kill his wife. Burch App. p. 200.    Testimony was also received from Dr. Eugene Freeman Smith, a treating psychiatrist, who testified about Petitioner's mental health history, including bipolar disorder with mixed psychotic features.  Dr. Smith opined that Petitioner had the capacity to know right from wrong and what he was doing. Marion Howard, a mental health professional and Registered Nurse who had known the petitioner more than a few months working at a program with group therapy and who had counseled Petitioner testified, as did Elizabeth Boaze, a mental health professional and social worker of Petitioner.  Sandra Shuler, a registered nurse at Hall Institute who worked with Petitioner testified. Burch App. pp. 192-252.

At the close of all the evidence at his trial, Pettinato decided to withdraw his plea of not guilty and plead guilty but mentally ill.  The following colloquy occurred:

> MR. THOMPSON: Your Honor, at this point in time during the lunch we have been in negotiations with the solicitor's office. We wish to at this time withdraw our plea of not guilty and be allowed to

40

plead guilty but mentally ill pursuant to those negotiations.

THE COURT: All right. Mr. Pettinato, you have heard what your lawyer has told me. Do you agree with what he has told me as being correct?

THE DEFENDANT: Yes, sir.

THE COURT: And do you wish to withdraw your pleas of not guilty as to each of the charges contained in the indictments to which you have-which you are now standing trial on and wish to enter pleas of guilty but mentally ill as to those charges?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, there are certain questions I need to ask you in order to determine that your pleas are freely and voluntarily made. That simply means that you have made your decision to plead guilty freely and voluntarily, and that nobody has coerced you or threatened you into arriving at that decision, and that you are doing so intelligently and knowingly. So there are certain questions I need to ask you.

Should you wish to respond to those, you may; should you wish not [to] respond and to continue with your jury trial, you, of course, may also do that.

First, let me ask you have you had sufficient time and opportunity to talk with your lawyer about your decision to withdraw your plea of not guilty and to enter pleas of guilty to each of these charges?

THE DEFENDANT: Yes, sir.

THE COURT: Do you need any additional time to spend with Mr. Thompson with reference to that decision?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with the services rendered on your behalf by Mr. Thompson?
THE DEFENDANT: Yes, sir.

THE COURT: Has he done everything that you have asked him to do?

41

THE DEFENDANT: Yes, he has.

THE COURT: Has he failed to do anything that you asked for him to do?

THE DEFENDANT: Not to my knowledge.

THE COURT: Has he talked to every person or witness which you have requested that he speak with?

THE DEFENDANT: Yes, sir.

THE COURT: And do you have any complaints about the manner in which he has represented you?

THE DEFENDANT: No.

. . . .

THE COURT: Mr. Pettinato, have you heard the discussions between myself and your lawyer and the solicitor with respect to the negotiated guilty pleas?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the terms of that agreement?

THE DEFENDANT: Yes, sir, I do.

THE COURT: What the solicitor and Mr. Thompson have told me is that they are-the solicitor is allowing you to plead guilty but mentally ill to the charge of murder which is count one of indictment 94-3042 and also plead guilty but mentally ill as to count two of that same indictment which is possession of a firearm during the commission of a violent crime, murder being defined under South Carolina law as a violent crime.

In return for your pleading guilty but mentally ill as to those two charges, upon my acceptance of your guilty pleas is that that indictment the solicitor is agreeing to dismiss or nolle pros indictment 94-4850 which is the indictment for pointing a firearm in count one and carrying a pistol in count two. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In addition, as I understand it, the only other term of that agreement or negotiated plea is that the solicitor is recommending that the sentences on indictment 94-3042 will be run concurrently, that is at the same time, whatever sentence I impose will be running at the same time rather than consecutively. Now, was that your understanding of the plea negotiations which have been entered into between you and your lawyer and the solicitor?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have any different understanding of those plea negotiations?

THE DEFENDANT: No, sir.

THE COURT: Was that your full understanding of the negotiations?

THE DEFENDANT: Yes, sir.

THE COURT: And do you agree with those conditions?

THE DEFENDANT: Yes, sir.

THE COURT: And understanding that, do you still wish to plead guilty to the charges as you have indicated?

THE DEFENDANT: Yes, I do.

THE COURT: Now, other than those plea negotiations, have you been promised anything in order to induce you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Have you been threatened in any way or coerced in any fashion by any person in order to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: And was it your decision to plead guilty to each of these charges, and your decision alone?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: All right. Based on the testimony of the doctor and the other evidence presented as well as the stipulation of the parties, I find that at the time the offenses were committed Mr. Pettinato was suffering from a mental illness or disease or defect which would prevent him from being able to conform his conduct to the requirements of the law.

I will accept your pleas of guilty but mentally ill as to the charge of murder and the charge of possession of a firearm during the commission of a violent crime. I'll be glad to hear from you and Mr. Thompson.

MR. THOMPSON: Your Honor, you have sat through two days of testimony and you have heard Mr. Pettinato's life story almost as to what happened in this matter. Mr. Pettinato testified for approximately an hour and a half yesterday on direct and about an hour today on cross. You have heard the doctors' testimony as to the mental illness; you have heard the testimony of his roommate as to the condition he was in. I don't know that there is anything else that we need to tell the Court. I have explained to Mr. Pettinato that even under this guilty but mentally ill plea that he is going to receive a life sentence and would not be eligible for parole for a 20-year period. That would be his first eligibility, and he does seem to understand that. I have also explained to him that under this recommendation that five years, mandatory five years, will be run concurrent with that life sentence as opposed to being tacked on at the end. He does understand that.

THE COURT: Mr. Pettinato, you have heard what your lawyer has told me. Do you have anything you would like to add to it?

THE DEFENDANT: No, no, Your Honor.

44

> THE COURT: Do you understand that the sentence
> that must be imposed upon my acceptance of your
> plea of guilty as to murder is a sentence of life
> imprisonment? Do you understand that the sentence
> that may be imposed for possession of a firearm
> during the commission of a violent crime is a term
> not to exceed five years?
>
> THE DEFENDANT: Correct.
>
> THE COURT: Understanding that, do you still wish
> for me to accept your pleas of guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You do not wish to continue with the
> jury trial.
>
> THE DEFENDANT: No, Your Honor.

Burch App. p. at 382-92.

The transcript of the plea hearing thus directly contradicts Petitioner's claim of involuntariness and amply supports the PCR court's finding that the plea was valid. The law requires Petitioner to make a far greater showing than he has done to obtain relief on this claim: "[R]epresentations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. . . . The subsequent presentation of conclusory allegations in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Petitioner's statements at the plea hearing, which facially demonstrate the validity of his plea, are conclusive absent a compelling reason to the contrary.

45

Under the AEDPA, the court cannot grant the petition unless the state PCR court's ruling that Petitioner entered a valid guilty plea was a decision that was contrary to or involved an unreasonable application of federal law, or resulted in a decision that was based on an unreasonable determination of the facts based on the evidence presented. See, 28 U.S.C. § 2254(d). Petitioner's claim that his guilty plea was not knowing, voluntary, or intelligent fails to meet this standard and should be denied.

## WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN RELATION TO THE PLEA

Although a valid plea waives all but jurisdictional challenges to events which occurred prior to the plea, a petitioner's claims of ineffective assistance of counsel are, however, reviewed to the extent that they impugn the validity of the plea itself. Petitioner has repeatedly argued that he was actually not guilty because he was insane, he was incompetent to understand the trial proceedings or to assist his lawyer, and that counsel was ineffective for not proving the same.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-88; see also, Wiggins v. Smith, 539 U.S. 510, 534 (2003); Williams v. Taylor, 529 U.S. 362 (2000).

The two-part test articulated in Strickland applies to cases challenging guilty pleas based on ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  Counsel must provide his client with an understanding of the law in relation to the facts so that the defendant may make an informed and conscious choice between entering the plea and proceeding to trial.  To be entitled to collateral relief, a petitioner must "prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act."  McMann v. Richardson, 397 U.S. 759, 774 (1970).

In the context of guilty pleas, the first half of the Strickland test is a restatement of the standard for attorney competence set forth in Tollett v. Henderson, 411 U.S. at 267, and McMann v. Richardson, 397 U.S. at 770-71.  The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. at 58-59.

A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland v. Washington, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. A court must adhere to a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland v. Washington, 466 U.S. at 689-90; see also, Bell v. Cone, 535 U.S. 685, 698 (2002).

Moreover, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91.

As stated above, Petitioner raised his ineffective assistance of counsel claims in his first PCR application. The PCR court cited and applied the Strickland v. Washington test in denying the claims. To establish that he is entitled to relief on these claims, Petitioner must establish that the PCR court' decision was contrary to, or involved an unreasonable application of Strickland or was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2). Petitioner has failed to

48

meet this burden.

In rejecting Petitioner's claims that counsel was ineffective and that such ineffectiveness caused him to plead guilty when he otherwise would have insisted on a jury determination of whether he was guilty, the PCR court found as follows:

> This Court finds as fact that when counsel first met with the Applicant at jail he was not able to conduct a discussion with the Applicant due to his mental state. Therefore, counsel had the Applicant sent to the State Hospital for an evaluation. The Applicant was kept there for several weeks and the hospital regulated his medications. After that, counsel was able to engage in reasonable discussions with the Applicant. This Court finds that there were discussions between counsel and the Applicant regarding the independent psychiatric examination by either [Dr.] Bierman or [Dr.] Smith. This Court finds that the Applicant's mother contacted counsel early in his representation and asked that he have the Applicant evaluated for adult attention deficit disorder. This Court finds that counsel talked with psychiatrists Bierman and Smith to determine whether they could assist in the Applicant's defense. However, both psychiatrists indicated that they could not do so and counsel discussed this fact with the Applicant. This Court finds that the Applicant's mother had a doctor who was willing to evaluate the Applicant and that the mother was willing to pay for the evaluation; however, she wanted to know if the court would allow the evaluation. Counsel advised the mother that if she could get a tentative appointment he would investigate whether the court would allow the evaluation. However, counsel never heard back from the mother.
>     This Court finds that counsel pursued a defense of not guilty by reason of insanity because there was no other defense to present. The Applicant had admitted shooting his wife. At the State Hospital, the Applicant was diagnosed as dysthymic with mild chronic depression. However, the hospital found that the Applicant was able to

conform his conduct.  Thereafter, counsel
discovered that the Applicant had been seen at the
local mental hospital. Counsel used Dr. Smith at
the local mental health as an expert. Dr. Smith
would not testify that the Applicant was not
criminally responsible as an expert witness;
however, counsel was able to put up the
Applicant's actions to support that defense
through the witness. Counsel questioned Dr. Smith
about the symptoms the Applicant displayed to
establish the Applicant's mental instability. In
response to Dr. Smith's testimony, the State put
up Bierman in rebuttal. On cross examination,
counsel was able to get Bierman to admit there was
a possibility that the Applicant was not in touch
with reality and could not conform or did not know
moral right from legal wrong. Thereafter, the
State again presented a plea offer to the
Applicant. A plea offer had been made to the
Applicant originally which the Applicant rejected.
The Applicant counseled with his attorney and his
family and was advised at all times that the
decision to plead was his own. Counsel explained
to the Applicant that there was no benefit to a
guilty but mentally ill plea as opposed to a
guilty plea, except as it related to parole. The
benefit of the plea was that on the second count
on a murder charge, if he got a life sentence and
consecutive time he would never be eligible for
parole. Counsel had conferred with Carl Lundberg
of the South Carolina Department of Probation,
Parole and Pardon Services on this issue. The
benefit of the plea to the Applicant was that the
State would recommend concurrent time and the
Applicant would be parole eligible. Counsel
explained this to the Applicant and he appeared to
understand.
     This Court finds that counsel had no problem
communicating with the Applicant once he was back
from the State Hospital. This Court finds that the
Applicant had discovered before trial that if he
got off of his medications his mental illness
would come back. Counsel advised the Applicant to
remain on his medications. This Court finds that
counsel did not notice any mental deficiencies in
the Applicant two (2) to three (3) weeks before
trial.

(App. pp. 509-512).

The state PCR court also noted, "that the Applicant alleges at the post conviction relief hearing that he had available to him a psychiatrist whom he had paid for who could evaluate him. However, the Applicant never identified who the psychiatrist was and never brought the psychiatrist to court to testify that the Applicant was insane at the time he killed his wife.  The Applicant must present that witness to sustain his burden of proof.  <u>Glover v. State</u>, 458 S.E.2d 538 (1995)." App. 513.

Additionally, the PCR court found that counsel spent many hours at the jail on many occasions talking with Petitioner about his insanity defense, advising Petitioner that the defense was a long shot, but that he had no other defense. (App. p. 512).

The trial record and the PCR hearing testimony fully support the PCR judge's conclusion that Petitioner had failed in his burden to show that his lawyer's performance was constitutionally infirm.  Petitioner did not establish that the PCR court's decision was contrary to, or involved an unreasonable application of <u>Strickland</u> or was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d)(1)(2).  No habeas relief should issue.

### WHETHER PETITIONER WAS COMPETENT TO STAND TRIAL

Petitioner has repeatedly argued that he was in fact incompetent to stand trial.  Although this question is subsumed in the discussion of the validity of his guilty plea and the

effectiveness of his attorney, out of an abundance of caution, this claim will be additionally considered.  The test for determining competence is whether a defendant "'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him.'"  Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

At the PCR hearing, trial counsel Thompson testified that Dr. Behrmann, a psychiatrist,  met with Petitioner the morning the trial began and determined that Petitioner was competent to go forward with the trial. (Burch App. p. 477).  Counsel also testified that he had no problems communicating with Petitioner after Petitioner returned from the State Hospital. (Burch App. p. 478).  At the outset of the trial, the state advised the trial judge that the Petitioner had previously been evaluated by the State Hospital and on July 27, 1994,  Dr. Behrmann concluded that he was competent to stand trial and that Dr. Behrmann had evaluated Pettinato that morning and that he was competent to stand trial. (Burch App. pp. 7-8).

Thompson testified that he did not have "any question" concerning Petitioner's competency at the time he entered his guilty plea. App. p. 494 (Ex. 11 at 70.)

The stipulation and report of Dr. Behrmann was entered in the record. Burch App. p. 8.  The record of the trial also

reveals  the Petitioner's ability to rationally communicate and respond to direct and cross-examination questions. Burch App. pp. 249-343.

Following the testimony of Petitioner at the PCR hearing, Dr. Behrmann testified that his opinion had not changed concerning Petitioner's mental state. Burch App. pp. 346-348, 354.

Based on the foregoing, the PCR court specifically found, "that the Applicant was psychiatrically examined and found competent to stand trial and to assist in his defense. Further, the Applicant has not produced any competent medical proof to support this allegation." Burch App. pp. 519-20.  The PCR court concluded that Petitioner's claim lacked merit and was "conclusively refuted by the record...." Burch App. p. 521.

Likewise, the third PCR judge, Judge Baxley held, "[t]his court finds that the Applicant's claim that he was incompetent during his previous two PCR cases is not credible.  The Applicant offered no credible evidence to support such an allegation."

These findings of fact of the state courts are fully supported by the record and are entitled to a presumption of correctness in these federal habeas corpus proceedings.  28 U.S.C. § 2254(e)(1).  Because of the presumption accorded these findings and because Petitioner is unable to present clear and

convincing evidence[2] to rebut the presumption, it appears that the state court factual finding that Petitioner was competent during his various proceedings may not be disturbed by this court. Additionally, it does not appear that the state court decisions were contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner is not entitled to relief on these grounds.

## WHETHER COUNSEL FAILED TO NOTICE A DIRECT APPEAL WHEN HE HAD BEEN DIRECTED TO DO SO BY PETITIONER

Petitioner also claims that his attorney misled him concerning the waiver of his right to a direct appeal. The PCR court, however, found as a fact that "trial counsel advised the Applicant that if he accepted a plea that all issues counsel had preserved for appeal would be waived." Burch App.p. 518. Specifically, the PCR judge found:

> In his eleventh and twentieth allegations, the Applicant complains that he was denied his right to appeal his guilty plea conviction. This Court finds as fact that trial counsel advised the Applicant that if he accepted a plea that all issues counsel had preserved for appeal would be waived. Counsel advised the Applicant that he

---

[2] Petitioner has never produced psychiatric evidence that he was legally insane when he murdered his wife, or that he was incompetent to assist his trial counsel and understand the proceedings, or that he could not knowingly and voluntarily plead guilty. Likewise, although Petitioner insists that he was mentally incompetent during his first and second PCRs, he has never produced psychiatric evidence to that effect to support his own opinion.

felt there were two (2) strong issues for appeal
that he would lose:

1.   The Solicitor calling the case on two (2)
indictments that the Applicant was never served
on; and 2. The trial court's refusal to charge
voluntary manslaughter.
      This Court finds that trial counsel advised
the Applicant that the trial court was considering
not charging guilty but mentally ill and not
guilty by reason of insanity.  This Court finds
that the Applicant advised counsel that he wanted
to waive his right to appeal and plead guilty.
Furthermore, this Court finds that the Applicant
never asked counsel to appeal his guilty plea
after he was convicted.  This Court finds as fact
that the Applicant knowingly, intelligently and
voluntarily waived his right to appeal his guilty
plea conviction.  In any event, this Court finds
there is no constitutional requirement that
necessitates that trial counsel inform a criminal
defendant of his right to appeal, following a
guilty plea.  Weathers v. State, ___ S.C. ___, 459
S.E.2d 838 (1995); Carey v. Leverette, 605 F.2d
745 (4th Cir. 1979).  Therefore, absent
extraordinary circumstances, the failure to be
advised of his right to an appeal from the guilty
plea does not result in a denial of the
Applicant's due process rights.  Younger v. Cox,
323 F.Supp. 412 (D.C. Va. 1971).  There being
nothing in the record to indicate that the
Applicant conveyed to his trial attorney a desire
to appeal, and there being no showing of
extraordinary circumstances that would require
counsel to inform his client of the right to
appeal, this Court finds that the allegation is
totally without merit and is denied and dismissed.

App. pp. 518-519.

The testimony at the plea and at the PCR hearing fully

support these factual conclusions.  Indeed, during the guilty

plea colloquy the court inquired of counsel, "And have you gone

over with him the consequences of his pleading guilty to these

charges or being found guilty of the charges?"  Counsel replied,

55

"Yes, sir, including the fact that any issues that may be for
appeal that came up during the course of the trial, with his
pleading guilty, he is now waiving those issues.  I have
explained that to him also."  The court then asked Petitioner,
"Do you understand that, Mr. Pettinato?"  Petitioner answered,
"Yes, sir." App. pp. at 392-93.

The PCR court's factual finding is presumed correct, and
Petitioner has failed to rebut that presumption by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1).  Further it does
not appear that the state court decisions were contrary to, or
involved an unreasonable application of clearly established
federal law or were based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceeding.  Therefore, no habeas relief should issue on these
grounds.

**WHETHER OTHER CONSTITUTIONAL ERRORS OCCURRED PRIOR TO THE PLEA**

Petitioner also believes he is entitled to a new trial
because of his contention that the trial court made various
reversible errors and that there was misconduct on the part of
the Solicitor.  For example, he claims he should not have stood
trial on the gun charge because it was presented untimely so that
counsel had insufficient time to prepare to defend against the
charges, the court should have ordered a competency hearing, the
court should have agreed to a jury charge on manslaughter and
not guilty by reason of insanity, and that he overheard threats

by witnesses and family members against him.  These claims are
not cognizable here because his guilty plea constituted a break
in the chain of events which preceded it in the criminal process
and all antecedent assignments of error are waived, save
jurisdictional errors.  <u>Tollett v. Henderson</u>, 411 U.S. 258,
266-67 (1973).

Additionally, these area alleged trial court errors which
should have been raised in a direct appeal.  Petitioner took no
appeal, but rather defaulted these claims and was procedurally
barred from bringing them at any other juncture.  As such, this
court should not reach them on their merits.  <u>Coleman v.
Thompson</u>, at 735; <u>Teague v. Lane</u>, at 299.  Petitioner is not
entitled to  relief on any ground which could have been raised on
appeal.

## <u>WHETHER PETITIONER WAS DENIED DUE PROCESS WHEN HIS SECOND AND THIRD PCRS WERE DISMISSED</u>

Lastly, Petitioner contends that his attempts to pursue
relief in state PCRs have been denied arbitrarily by South
Carolina's successive application rule and the PCR statute of
limitations.  These types of claims are simply not cognizable in
federal habeas corpus proceedings.  <u>See</u>, <u>e.g.</u>, <u>Bryant v.
Maryland</u>, 848 F.2d 492 (4th. Cir. 1988)(infirmities in state PCR
proceedings cannot serve as a basis for federal habeas corpus
relief).

Petitioner also complains about the lawyers who represented
him in his various PCRs.  Likewise, these claims are not

57

cognizable pursuant to 28 U.S.C. § 2254(i) (ineffectiveness of counsel during Federal or state collateral post-conviction proceedings shall not be a ground for relief).  Petitioner is not entitled to relief on claims about his PCRs or his PCR attorneys.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondent's summary judgment motion be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
August _29_, 2007

58

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).